MPD:fm 03-369

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

GORDON NOONAN AND
NANCY NOONAN

VS C.A. NO. 05-150 S

NEW WHARF TAVERN, INC.

**DEFENDANT NEW WHARF TAVERN, INC'S MOTION FOR SUMMARY JUDGMENT**

Defendant New Wharf Tavern, Inc. hereby moves for summary judgment pursuant to Fed. R. Civ. Pro. 56 (c). In support of the motion, the defendant submits the attached Memorandum, Statement of Undisputed Facts, and corresponding exhibits.

/s/ Mark P. Dolan______________
Mark P. Dolan, Esq. #3280
Rice Dolan & Kershaw
Attorneys for Defendant
170 Westminster Street, Suite 900
Providence, RI 02903
(401) 272-8800 Phone
(401) 421-7218 Fax
E-mail: ricedolan@ricedolan.com

/s/ David E. Maglio______________
David E. Maglio, Esq. #3459
David E. Maglio & Associates, P.C.
Attorneys for Defendant
The Owen Building
101 Dyer Street, Second Floor
Providence, RI 02903
(401) 831-5400 Phone
(401) 831-7979 Fax
E-mail: dmaglio@magliolaw.com

CERTIFICATION

TO: Paul E. Phillips, Esq.
Phillips & D'Aloisio
91 Friendship Street, Fourth Floor
Providence, RI 02903

Frank C. Corso, Esq.
15 Court Square, Suite 240
Boston, MA 02108

Dated: September 12, 2006

/s/ Mark P. Dolan

MPD:fm 03-369

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

GORDON NOONAN AND
NANCY NOONAN

VS C.A. NO. 05-150 S

NEW WHARF TAVERN, INC.

**MEMORANDUM IN SUPPORT OF DEFENDANT NEW WHARF TAVERN, INC'S MOTION FOR SUMMARY JUDGMENT**

Defendant New Wharf Tavern, Inc. (hereinafter the "Wharf Tavern") has moved for summary judgment. This memorandum is submitted in support.

## FACTUAL BACKGROUND

The entirety of the aforementioned facts are set forth in the Statement of Undisputed Material Facts attached hereto, with corresponding reference to transcripts and/or other exhibits.

This claim results from a fall injury that occurred on October 17, 2003. On that date, the plaintiff Gordon Noonan was attending a dinner at the Wharf Tavern Restaurant in Warren, Rhode Island. On the date of the incident, Mr. Noonan was 74 years old, retired, and prior to retirement had owned a construction company.

The dinner in question was hosted by the Royal Order of Jesters, a male-only fraternal organization of which Mr. Noonan was a member. That organization had arranged for a members-only dinner in the second floor banquet room at the Wharf Tavern.

Mr. Noonan had been to the Wharf Tavern at least thirty times prior to the date of the incident, and had had occasion to attend a function in the second floor banquet room previously. The banquet room is accessed by a stairway leading from the first floor of the restaurant. On no occasion prior to the date of the incident did Mr. Noonan ever have any problem using the stairway, nor did he note any defective or dangerous condition about it.

On the evening in question, Mr. Noonan traveled with his wife to the Wharf Tavern with friends, Stuart and Nancy Eddy. Mr. Eddy was also a member of the Jesters. After dropping their husbands off at the restaurant, Mrs. Noonan and Mrs. Eddy proceeded to a local movie theater.

Mr. Noonan did not have any alcohol to drink that day before arriving at the Wharf Tavern. The banquet room was served by a single open bar tended by Wharf Tavern employee, Michael Asciola. In order to be served an alcoholic beverage at the open bar, the patrons of the Jesters function had to go to the bar tended by Mr. Asciola. There was no table service. Mr. Noonan testified at deposition that he consumed one glass of wine during the cocktail hour before dinner, and another glass of wine during the course of dinner (which consisted of a salad and shrimp meal). Mr. Asciola at no time observed any signs of visible intoxication of Mr. Noonan, nor did any other employees of the Wharf Tavern who have previously testified at deposition. Guy Henry, a friend of Mr. Noonan who attended the Jesters function, likewise saw no visible signs of intoxication. Mr. Noonan, who has testified that he consumed only two glasses of wine that evening, obviously contends he exhibited no signs of visible intoxication. In fact, he

testified at deposition approximately eight months after the filing of suit that he was unaware that any claim was being made on his behalf with respect to intoxication.

In any event, at approximately 9:30 p.m. Mr. Noonan got up from his table and proceeded down a set of stairs to the second floor to meet his wife (she had planned to return to the restaurant after her movie and wait for him on the first floor). The stairs are sixteen (16) in number. Copies of photographs of the stairs are attached as Exhibit G to the Defendant's Statement of Undisputed Material Facts. While descending the stairway, Mr. Noonan claims that he was to the right hand side of the stairway (going down), approximately halfway down the stairs, looking to his left to see if he could see his wife when suddenly he lost his balance, causing him to fall. At the point Mr. Noonan claims to have lost his balance, the handrail transitions from a section of wooden railing attached to the wall to a wooden railing wrapped by rope.[1] Mr. Noonan testified at deposition that he had no problem walking up the stairs going to dinner that night, and had no problem

---

[1] While for purposes of the motion for summary judgment the plaintiff's version is of course accepted, it should be noted that the plaintiff's current version of where he fell is contradicted by every witness, the police report, and Mr. Noonan's own attorneys:

i. William Pannone, formerly employed by the Wharf Tavern as a banquet chef on the evening of the incident, observed the plaintiff's fall and specifically testified at deposition that he observed the plaintiff step forward at the top of the stairway, appeared to miss a step, and fell head first. Pannone depo. at page 37, lines 3-22.

ii. Erica Pacheco, formerly employed by the Wharf Tavern as a bus girl, witnessed the incident and observed Mr. Noonan approximately three to four steps from the top of the stairway at the time of the start of his fall. Pacheco depo. at page 92, lines 16-25.

iii. Stephanie Zinno, formerly employed as a waitress by the Wharf Tavern, testified at deposition that Mr. Noonan was approximately three to four steps from the top of the stairs when she observed him begin to fall. Zinno depo. at page 10, lines 1-3.

iv. The police report states that Mr. Noonan fell from the top of the stairway.

v. The plaintiffs' expert Coniglio testified at deposition that as of the time of his report of June 9, 2004 he was informed by plaintiffs' counsel that counsel did not know whether or not Mr. Noonan was either going up or down the stairs at the time of his fall, but was told by counsel that Mr. Noonan had fallen 20 feet (which would put him at the top of the stairs, consistent with all other testimony). Coniglio depo. at p.101, lines 13-17.

descending the stairs immediately prior to the point where he began his fall. Mr. Noonan was quite specific in his deposition that he does not contend that there was anything about the stairway that caused or contributed to his fall other than the handrail.

The plaintiff was taken from the scene of the incident by rescue to Rhode Island Hospital. Laboratory results reflect that the plaintiff was intoxicated at the time of the incident.

The Wharf Tavern is housed in a building that is over 100 years old (having been constructed in 1895). The restaurant has been operating since 1955. Records from the Warren Building Department produced by the plaintiffs in discovery in this case indicate that the second floor was converted to a dining room in 1956. The stairway in its present configuration has been in existence at least since that time.

## STANDARD OF REVIEW

A party shall be entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When deciding a motion for summary judgment, the Court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir.1997).

Summary judgment involves shifting burdens between the moving and nonmoving parties. Initially, the burden requires the moving party to aver "an absence of evidence to support the nonmoving party's case. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir.1990) (quoting Celotex corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct.

2548, 2554, 91 L.Ed.2d 265 (1986)). Once the moving party meets this burden, the burden falls upon the nonmoving party, who must oppose the motion by presenting facts that show a genuine "trialworthy issue remains." Cadle, 116 F.3d at 960 (citing Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir.1995); Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir.1994)). An issue of fact is "genuine" if it "may reasonably be resolved in favor of either party." *Id.* (citing Maldonado-Denis, 23 F.3d at 581).

To oppose the motion successfully, the nonmoving party must present affirmative evidence to rebut the motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57, 106 S.Ct. 2505, 2514-2515, 91 L.Ed.2d 202 (1986). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, [or] unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990). Moreover, the "evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve." *Id.* (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir.1989)). Therefore, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trialworthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir.1993) (citing Anderson, 477 U.S. at 249).

## PLAINTIFFS' CLAIMS

The plaintiffs have brought a Complaint in four counts. Count I makes claim for alleged defective premises. The plaintiff alleges generally, and without any specificity, that the defendant breached a duty to keep the premises "free from dangerous and/or defective conditions." See Plaintiffs' Complaint, Paragraph 7. Count II makes claim against the defendant pursuant to R.I. Gen. Laws §3-14-6, alleging that the defendant negligently served alcohol to the plaintiff Gordon Noonan while visibly intoxicated. Count III makes claim pursuant to R.I. Gen. Laws §3-14-7 and alleges that defendant intentionally and recklessly served alcohol to Mr. Noonan while visibly intoxicated. Count IV makes claim for the loss of consortium of plaintiff Nancy Noonan.

## ARGUMENT

### I. The Plaintiffs Cannot Produce Any Evidence in Support of the Proposition That There Was Any Defective Condition In Or About the Premises Of Which The Defendant Knew Or should Have Known Causing Or Contributing To His Injury.

#### A. Law.

"Premises liability" is defined in Blacks Law Dictionary 119 (7th ed. 1999) as "[a] landowners or landholders tort liability for conditions or activities on the premises." Premises liability law in Rhode Island "imposes an affirmative duty upon owners and possessors of property: 'to exercise reasonable care for the safety of persons reasonably expected to be on the premises *** includ[ing] an obligation to protect against the risks of a dangerous condition existing on the premises, provided the landowners knows of, or by the exercise of reasonable care would have discovered the dangerous condition.' " Kurczy v. St. Joseph Veterans Association, Inc., 820 A.2d 929 935 (R.I. 2003) (quoting

Tancrelle v. Friendly's Ice Cream Corp., 756 A.2d 744, 752 (R.I. 2000) (emphasis added)).

In this case the plaintiff seeks to clear the aforementioned hurdle by attempting to argue that the stairway in effect violated "applicable codes" on the date of the incident. See Plaintiff Gordon Noonan's Answer to Defendant's Interrogatory 23.

The Rhode Island State Building Code is only applicable to structures built after 1977, see R.I. Gen. Laws § 23-27.3-105.1, or to buildings which have been significantly altered since 1977. See id. at § 23-27.3-106.1-106.4. Recognizing the provisions of the Code, the Rhode Island Supreme Court has long held that the Code is not retroactive. See Brodeur v. Desrosiers, 505 A.2d 418, 422 (R.I. 1986).

**B. Analysis.**

As outlined above, and as reflected in the plaintiffs' expert disclosures, the basis for the plaintiffs' premises liability claim is founded on an allegation that the stairway in question, and more specifically the handrail which the plaintiff contends was the only aspect of the stairway purportedly contributing to his fall, violated the pertinent Building Code. However, as shown, the building and stairway predated the adoption of the Code, the Code is not retroactive, and is thus inapplicable and irrelevant.

The plaintiffs attempt to connect the Code, through their expert disclosures, claiming that an addition to the restaurant in 1991 had a value in excess of 50 percent of the existing structure, thereby triggering the Code's retroactive application. R.I. Gen. Laws § 23-27.3-106.1-106.4. However, such an argument has been completely negated by the testimony of both of the plaintiffs' experts, Raymond Keough of Keough Construction and John Coniglio of Occupational Safety Environmental Associates.

Both Mr. Keough and Mr. Coniglio have been deposed. Mr. Keough admitted at deposition that he does not know the dimensions of the 1991 addition, and despite a site visit never measured them. He also admitted that if the dimensions of the addition is of the square footage referenced in the defendant's expert disclosures, which he cannot contradict, the value of the addition is less than 50 percent of the value of the overall structure. He further admitted the per square foot cost utilized by him in his report, and as contained in plaintiffs' expert disclosure, is not an appropriate figure to use to estimate the cost of construction of the addition. Finally, Mr. Keough admitted that he simply assumed that portions of the building were constructed as part of the addition in 1991, when in fact they were not. (In this regard, in order for the 50 percent rule to apply, all of the construction/renovation work in question must be performed within the same twelve month period of time. See R.I. Gen. Laws § 23-27.3-106.1). For example, Mr. Keough simply assumed that pilings upon which the addition was constructed were built at the time of the addition. That assumption is contradicted by the record. In sum, Mr. Keough admitted at deposition that the analysis utilized in his report was faulty and invalid in numerous respects. Most importantly, he admitted he cannot provide an opinion as to the cost/value of the construction for the addition in 1991 since he does not even know its dimensions.

Similarly, the "opinions" of Mr. Coniglio were also completely negated. Interestingly, the "expert" Coniglio claims to have obtained a masters and Ph.D from Kennedy Western University, a "University" without a campus, never having attended any classes, taking tests proctored by an individual of his own selection, and cannot recall the title of his alleged dissertation (finalized in 2002). Mr. Keough admitted that the

Rhode Island State Building Code was not enacted until 1977 and that it does not apply retroactively. He admitted at deposition that he was aware of the 50 percent addition/improvement requirement in order to necessitate a pre-1977 building to be brought up to Code. Like Mr. Keough, Mr. Coniglio never measured what he believes to constitute the 1991 addition. He testified that there were no Building Codes in effect in Warren, Rhode Island prior to 1977. Most importantly, he admitted that he has never determined that any addition or other renovation to the building exceeded the 50 percent rule.

There has been no evidence developed at anytime during discovery, despite numerous depositions of witnesses, employees, and owner representatives that there was any problem with the stairs at anytime prior to the plaintiff's fall, and no evidence that the defendant knew or should have known of any alleged defective condition.

All of the above is outlined in the defendant's Statement of Undisputed Facts with corresponding evidentiary citations.

Simply put, plaintiffs claims that any aspect of the stairway, including the handrail, violated the Code has been shown to be meritless. There is no evidence in support of their claim of premises liability in this case, and this Court should now grant summary judgment with respect to Count I of the complaint.

## II. Plaintiff Cannot Produce Any Evidence to Demonstrate That New Wharf's Bartender, Michael Asciola, Knew or Should Have Known that He was Furnishing Alcohol to a Visibly Intoxicated Customer.

### A. Law.

Rhode Island law creates a cause of action against a defendant who negligently serves liquor to a visibly intoxicated individual. *See* R.I. Gen Laws §3-14-6. Service of

liquor is negligent if "the defendant knows, or if a reasonable and prudent person in similar circumstances would know that the individual being served is... visibly intoxicated." *See* R.I. Gen Laws §3-14-6. The statute defines "visibly intoxicated" as "a state of intoxication accompanied by a perceptible act or series of acts presenting an apparent sign or signs of intoxication." *See* R.I. Gen. Laws §3-14-3(i). Intoxication means,

> ...a substantial impairment of a person's mental or physical faculties as a result of drug or alcoholic beverage use so as to diminish that person's ability to think and act in a manner in which an ordinary prudent and cautious person, in full possession of his or her faculties and using reasonable care, would act under like circumstances. *See* R.I. Gen. Laws §3-14-3(c).

The Rhode Island Supreme Court, in the case of *Embrey v. Ortiz,* 538 A.2d 1002 (R.I. 1988) offered an analysis of the liquor liability statute and its purpose:

> Intoxication in many instances is a condition that may not be detected. It is unreasonable to hold the licensee liable for serving intoxicated persons unless the licensee or the licensee's agent knew or should have known that the consumer was inebriated. *See* *Lawrence v. Anheuser-Busch, Inc.,* 523 A.2d 864, 871 (R.I. 1987). The server cannot be expected to make a determination of sobriety unless the server is familiar with the drinker's previous level of alcohol consumption or unless the drinker manifests such telltale signs of intoxication as swaying or slurred speech at or before the time that he is served his last drink.

Because it would be unreasonable to attribute liability to servers who exercise reasonable and prudent practices, as the court notes above, the statute does not charge the server with knowledge of the individual's consumption of liquor off the defendant's premises unless the individual's appearance, behavior, or other facts would put a reasonable person on notice of that consumption. *See* R.I. Gen. Laws §3-14-6(d).

**B. Analysis.**

Plaintiff can produce no evidence that Gordon Noonan was visibly intoxicated prior to being served alcohol at the Wharf Tavern. By his own admission, Mr. Noonan consumed no alcoholic beverages before going to the Wharf Tavern. He only consumed one glass of wine during the cocktail hour before dinner, and one glass of wine with dinner. Mr. Noonan consumed these two drinks during a three hour time span, which included dinner. He arguably did not consume enough to become intoxicated, let alone visibly intoxicated.

Guy Henry, a friend of Mr. Noonan who was with him at New Wharf Tavern prior to the accident, provided deposition testimony supporting Mr. Noonan's account of his drinking and sobriety. Mr. Henry stated that Mr. Noonan only consumed one or two alcoholic beverages prior to dinner. Mr. Henry observed no signs of visible intoxication in Mr. Noonan at any time during the night.

None of the employees of New Wharf Tavern reported seeing any signs of visible intoxication in Mr. Noonan. Michael Asciola, the only bartender who served the Jester's function at New Wharf Tavern, said that he only served Mr. Noonan two or three drinks. Mr. Asciola did not observe Mr. Noonan exhibiting any signs of intoxication at any time. Erica Pacheco, a bus girl at New Wharf Tavern and eye witness to the fall, met Mr. Noonan earlier in the evening and observed no signs of intoxication.

Other employees of New Wharf Tavern who were deposed by counsel had no contact with Mr. Noonan prior to his fall, and therefore can offer no evidence that Mr. Noonan was visibly intoxicated. William Pannoni, a cook at New Wharf Tavern who witnessed Mr. Noonan's fall, said he had no contact with any of the guests at the Jester's

function prior to Mr. Noonan's accident. Judith Beth Brayton, who owned New Wharf Tavern and helped care for Mr. Noonan after the accident, had no contact with Mr. Noonan prior to the accident.

All of the above is outlined in the defendant's Statement of Undisputed Facts with corresponding evidentiary citations.

The plaintiffs can produce no evidence that any agent at New Wharf Tavern knew or should have known that he or she was serving a visibly intoxicated customer. Mr. Noonan, by his own account and those of several other witnesses, did not consume enough alcohol to become intoxicated. No one at New Wharf Tavern, including Mr. Noonan's friend, observed any visible signs of intoxication in Mr. Noonan. Therefore, because the plaintiffs cannot produce any evidence to prove this count, the Court should rule for the defendants on Count II.

## III. Plaintiff Cannot Produce Any Evidence to Demonstrate That New Wharf's Bartender, Michael Asciola, Consciously Disregarded an Obvious and Substantial Risk That Serving Liquor to Mr. Noonan Would Cause Physical Harm to Mr. Noonan or Others.

### A. Law.

Liability for reckless service of liquor, as defined by R.I. Gen Laws §3-14-7, constitutes the service of liquor to a visibly intoxicated person when "the server consciously disregards an obvious and substantial risk that serving liquor to that individual will cause physical harm to the drinker or to others." Disregard of this risk "must involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation." *See* R.I. Gen Laws §3-14-7. The statute lists some examples of serving practices that are admissible as evidence of reckless conduct, including,

> (1) Active encouragement of intoxicated individuals to consume substantial amounts of liquor;
>
> (2) Service of liquor to an individual who is under twenty-one (21) years old when the server has actual or constructive knowledge of the individual's age; and
>
> (3) Service of liquor to an individual that is so continuous and excessive that it creates a substantial risk of death by alcohol poisoning.
> R.I. Gen Laws §3-14-7.

**B. Analysis.**

As noted above, the plaintiff can produce no evidence that Gordon Noonan was visibly intoxicated during the night of the incident. R.I. Gen Laws §3-14-7 requires the plaintiff to be visibly intoxicated in order to bring suit. Because plaintiff can produce no evidence that Mr. Noonan was visibly intoxicated, this claim must fail.

Even if the Court found Mr. Noonan to be visibly intoxicated, there is no evidence that indicates that the service of liquor to Mr. Noonan represented a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation. As noted above, Mr. Noonan only consumed two or three drinks in the three hours that he spent at the Tavern. Under the circumstances, such service of liquor cannot be considered a gross deviation from the reasonable person standard and the motion as to Count III should be granted.

**IV. The Plaintiff's Loss of Consortium Claim, to the Extent That it is Derived from Plaintiff's Negligent and Reckless Service of Liquor Claims, Must Fail Because The Loss of Consortium Claim is Dependant on These Other Claims**

**A. Law.**

Rhode Island law allows a married person to recover damages for loss of consortium caused by tortious injury to his or her spouse. *See* R.I. Gen. Laws §9-1-41. In

enacting this law, the Rhode Island Legislature intended to preserve the common law rule that such actions are derivative in nature, and dependent on the spouse's right to recovery. See *Sama v. Cardi Corporation et al.*, 569 A.2d 432, 433 (R.I. 1990) (holding married person had no right to recovery under loss of consortium when spouse's right to recovery precluded).

**B. Analysis.**

If the Court grants summary judgment in favor of defendants on Counts I, II and III, Mrs. Noonan's loss of consortium claim must fail to the extent that it is based on these claims. Like the married person's claim in *Sama*, Mrs. Noonan's claim is dependant on her husband's right to recovery. *See id.* If Mr. Noonan's right to recovery is precluded, Mrs. Noonan's right to recovery must fail. Therefore, the court should grant summary judgment in favor of defendants on Mrs. Noonan's loss of consortium claim set forth in Count IV, as this claim is dependant on Counts I through III.

## CONCLUSION

For all these reasons, the defendant respectfully requests that its motion, as to Counts I-IV of the plaintiffs' complaint, now be granted.

/s/ Mark P. Dolan________________
Mark P. Dolan, Esq. #3280
Rice Dolan & Kershaw
Attorneys for Defendant
170 Westminster Street, Suite 900
Providence, RI 02903
(401) 272-8800 Phone
(401) 421-7218 Fax
E-mail: ricedolan@ricedolan.com

/s/ David E. Maglio______________
David E. Maglio, Esq. #3459
David E. Maglio & Associates, P.C.
Attorneys for Defendant
The Owen Building
101 Dyer Street, Second Floor
Providence, RI 02903
(401) 831-5400 Phone
(401) 831-7979 Fax
E-mail: dmaglio@magliolaw.com

CERTIFICATION

TO: Paul E. Phillips, Esq.
Phillips & D'Aloisio
91 Friendship Street, Fourth Floor
Providence, RI 02903

Frank C. Corso, Esq.
15 Court Square, Suite 240
Boston, MA 02108

Dated: September 12, 2006

/s/ Mark P. Dolan
______________________________