MPD:fm 03-369

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

GORDON NOONAN AND
NANCY NOONAN

VS C.A. NO. 05-150 S

NEW WHARF TAVERN, INC.

**STATEMENT OF UNDIPSUTED MATERIAL FACTS AT TO WHICH DEFENDANT CONTENDS THERE IS NO GENUINE ISSUE NECESSARY TO BE LITIGATED**

1. On October 17, 2003, the plaintiff Gordon Noonan visited the Wharf Tavern restaurant located in Warren, Rhode Island. See deposition of Gordon Noonan attached hereto as Exhibit A, p. 7, lines 22-24.

2. On the date of the incident, Mr. Noonan was 74 years old, retired, and prior to retirement had owned a construction company. See Exhibit A, p. 6, lines 8-19 and p. 7, lines 9-15.

3. Mr. Noonan had been to the Wharf Tavern on approximately thirty occasions prior to the date of the incident. See Exhibit A, p. 8, lines 3-11.

4. On the evening in question, Mr. Noonan went to the Wharf Tavern to attend a group function for the Royal Order of Court Jesters ("Jesters"). See Exhibit A, p. 9, lines 13-17.

5. The Wharf Tavern hosted the Jesters' function in an upstairs banquet room, which was served by a single open bar tended by employee Michael Asciola. See Deposition of Michael Asciola, November 28, 2005, attached as Exhibit B, p. 4 line 11 – p. 6, line 1.

6. Mr. Noonan had had occasion prior to the date of the incident to attend a wedding reception in the upstairs banquet room, and had no problem using the stairway on that prior occasion and in spite of his background in construction noted no defective or dangerous condition. See Exhibit A, p.13, lines 6-11 and p. 17, lines 10-17.

7. Mr. Noonan did not have any alcohol to drink that day before arriving at the Wharf Tavern. See Exhibit A, p. 26, lines 1-4.

8. In order to be served an alcoholic beverage at the open bar, the patrons of the Jesters' function had to go to the bar tended by Mr. Asciola. There was no table service. See Exhibit B, page 14, line 20 – page 15 line 2.

9. Mr. Noonan consumed one glass of wine during the cocktail hour before dinner. See Exhibit A, p. 34. lines 4-6.

10. After the cocktail hour Mr. Noonan consumed a salad and a shrimp dinner. See Exhibit A, p. 32, lines 4-11.

11. Mr. Noonan consumed another glass of wine during the course of dinner. See Exhibit A, p. 34, lines 11-13.

12. Mr. Asciola served Mr. Noonan two or three alcoholic beverages, and at no time observed any signs of visible intoxication in Mr. Noonan. See Exhibit B, page 16 lines 9-12; page 34 lines 6-11; page 37, lines 11-14.

13. Guy Henry, a friend of Mr. Noonan who attended the Jesters' function, observed Mr. Noonan consume one or two alcoholic beverages, and saw no signs of visible intoxication in Mr. Noonan. See Deposition of Guy Noel Henry, August 18, 2005, attached as Exhibit C, page 32 lines 11-22; page 33 lines 9-13.

14. No other employees at New Wharf Tavern saw any signs of visible intoxication in Mr. Noonan on the night in question. See Deposition of Erica Pacheco, November 29, 2005, attached as Exhibit D, page 103 lines 13-19; Deposition of William Pannoni, November 7, 2005, attached as Exhibit E, page 10 line 19 – page 11 line 20; Deposition of Judith Beth Brayton, November 25, 2005, attached as Exhibit F, page 5 lines 15-22.

15. Mr. Noonan testified at deposition on December 14, 2005 that he was unaware prior to the deposition that any claim was being asserted on his behalf with respect to intoxication. See Exhibit A, p. 25 lines 10-15.

16. At approximately 9:30 p.m. Mr. Noonan got up from his table and proceeded down the set of stairs from the second floor to meet his wife at the first floor of the restaurant. See Exhibit A, p. 32, lines 14-18.

17. The stairway in question is comprised of sixteen (16) steps. Photographs of the stairway are attached as Exhibit G.

18. While descending the stairway, Mr. Noonan claims that he was to the righthand side of the stairway, approximately halfway down the stairs looking to his left to see if he could see his wife, when he suddenly lost his balance, causing him to fall. See Exhibit A, p. 41, lines 13-18, and p. 44, lines 16-25.

19. At the point Mr. Noonan claims to have lost his balance the handrail transitions from a wooden railing affixed to the wall, to a section of railing wrapped by rope. See defendant's expert disclosures attached hereto as Exhibit H.

20. Mr. Noonan had no problem walking up the stairs going to dinner that night. See Exhibit A, p. 50, lines 1-3.

21. Mr. Noonan had no problem descending the stairs immediately prior to when he began to fall. Exhibit A, p. 50, lines 4-6.

22. Mr. Noonan does not contend that there was anything about the stairway that caused or contributed to his fall other than the handrail. Exhibit A, p. 57, lines 15-18.

23. Mr. Noonan sustained injury as a result of his fall and was brought by ambulance to Rhode Island Hospital.

24. The Rhode Island Hospital records reflect that a blood sample was drawn at 10:55 p.m. on which an ethyl alcohol analysis was performed. The laboratory reported an ethyl alcohol result of 246 mg/dl. See Rhode Island Hospital admission records.

25. Mr. Noonan was intoxicated at the time of the incident. See Rhode Island Hospital admission records and plaintiffs' expert disclosures.

26. The restaurant building is over 100 years old (having been constructed in 1895) and has been operating as a restaurant since 1955. Records from the Warren Building Department indicate that the second floor was converted to a dining room in 1956. Upon information and belief, the stairway in its present configuration has been in existence at least since that time.

27. The Rhode Island State Building Code is only applicable to structures built after 1977, see R.I. Gen. Laws §23-27.3-105.1 and Drogan v.Vaughn, 176 F. 3d 17 (1st Cir.), or to which buildings which have been significantly altered since 1977, see id. at §23-27.3-106.1-106.4, as a results of alterations or improvements made to an existing structure exceeding 50 percent of the current replacement value of the existing structure.

28. An addition was placed onto the restaurant in 1991.

29. The dimensions of the one-story addition are approximately 41 feet-6 inches x 81 feet-6 inches equal to 3,383 square feet. The 1991 value of the addition is well-below 50 percent of the value of the replacement costs of the existing structure. See defendant's expert disclosures attached hereto as Exhibit H.

30. The plaintiffs have identified two experts relating to the premises liability aspect of the case, Raymond Keough of Keough Construction and John Coniglio of Occupational Safety & Environmental Associates, Inc.

31. This Court's Pre-trial Order precludes the naming of any additional liability experts for the plaintiffs.

32. Both Mr. Keough and Mr. Coniglio have been deposed. See transcript of deposition of Raymond Keough conducted on July 7, 2006 and transcript of deposition of John Coniglio conducted on July 13, 2006.

33. Mr. Keough has admitted at deposition that he does not know the dimensions of the 1991 addition and, despite a site visit, never measured them. See Exhibit I, p. 35, lines 14-17.

34. Mr. Keough admitted at deposition that if the addition is of the square footage referenced in the defendant's expert disclosure, which he cannot contradict, the value of the addition is less than 50 percent of the value of the overall structure. See p. 40, lines 20-25 and p. 41, lines 1-2.

35. Mr. Keough admitted at deposition that the per square foot cost utilized by him in his report and in plaintiff's expert disclosure is not an appropriate figure to use to estimate the construction cost of the addition. See Exhibit I, p. 18, lines 22-25 and p. 19, lines 1-4.

36. In calculating the cost of the 1991 addition, Mr. Keough admitted at deposition that he assumed that the deck on piles was constructed at the same time of the addition, although he had no knowledge in that regard. See Exhibit I, p. 23, lines 20-25. In fact, the deck on piles was not constructed at the time of the addition. See deposition of Roger Croteau, Exhibit J, p. 14, lines 5-9. The addition was built at a separate time in or about 1991. See Exhibit I, p. 14, lines 21-24.

37. Mr. Coniglio claims to have obtained a Masters and Ph.D from Kennedy Western University, a "University" without a campus, never having attended any classes, taking tests proctored by an individual of his own selection and cannot recall the title of his alleged dissertation (finalized in 2002). See Coniglio deposition attached as Exhibit K p. 9, lines 4-14, p. 10, lines 6-19, and p. 13, lines 15-25.

38. Mr. Coniglio has never measured the addition. See Exhibit K, p. 73, lines 3-7.

39. Mr. Coniglio testified that he is aware that the Rhode Island Building Code provides for a structure pre-dating the adoption of the State-wide Building Code in 1977 be required to be brought up to Code, additions and/or improvements must be performed in excess of a value of 50 percent of the existing structure. See Exhibit K, p. 111, lines 16-23.

40. There were no Building Codes in effect in Warren, Rhode Island prior to 1977. See Exhibit K, p. 100, lines 5-7.

41. There was no change in use of the building anytime after 1977.

42. Mr. Coniglio has never determined that any addition or other renovation exceeded the 50 percent rule. See Exhibit K, p. 110, lines 11-13.

43. There is no evidence that any other patron of the Wharf Tavern has ever had any problem ascending or descending the stairs in question.

44. There is no evidence that the defendant knew or should have known of any defective and/or dangerous condition with the stairway.

/s/ Mark P. Dolan_____________
Mark P. Dolan, Esq. #3280
Rice Dolan & Kershaw
Attorneys for Defendant
170 Westminster Street, Suite 900
Providence, RI 02903
(401) 272-8800 Phone
(401) 421-7218 Fax
E-mail: ricedolan@ricedolan.com

/s/ David E. Maglio______________
David E. Maglio, Esq. #3459
David E. Maglio & Associates, P.C.
Attorneys for Defendant
The Owen Building
101 Dyer Street, Second Floor
Providence, RI 02903
(401) 831-5400 Phone
(401) 831-7979 Fax
E-mail: dmaglio@magliolaw.com

CERTIFICATION

TO: Paul E. Phillips, Esq.
Phillips & D'Aloisio
91 Friendship Street, Fourth Floor
Providence, RI 02903

Frank C. Corso, Esq.
15 Court Square, Suite 240
Boston, MA 02108

Dated: September 12, 2006

/s/ Mark P. Dolan