UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

---

GORDON NOONAN AND
NANCY NOONAN

V. C. A. NO.: 05-150S

NEW WHARF TAVERN, INC.

---

PLAINTIFFS' STATEMENT OF DISPUTED FACTS

1. ¶5 of Defendant's Statement of Undisputed Facts (hereinafter, "Def.'s Statement") is disputed in that wait staff in addition to Michael Asciola served the upstairs banquet room. Moreover, Michael Asciola acted as cocktail waiter by attending tables, taking orders and bringing drinks to the tables. (*See* M. Asciola Deposition at 9, ll. 22-25 and 10, ll. 1-10, attached hereto as *Ex. 1*; *see also* L. Robert Smith Deposition at 16 ll. 23-25 and 17 ll. 1-7, attached hereto as *Ex. 2*.)

2. ¶6 of Def.'s Statement is disputed with regard to Mr. Noonan's construction background. ¶6 implies that Mr. Noonan's had expertise in the field of defective or dangerous construction conditions. In fact, Mr. Noonan's business activities centered around development of commercial and residential rental properties. (*See* G. Noonan Deposition at 6, ll. 8-19; 17, ll.19-25; 18, ll.1-16; 19, ll. 7-25; and 20, ll. 1-17, attached hereto as *Ex. 3*.)

3. ¶8 of Def.'s Statement is disputed in that wait staff in addition to Michael Asciola served the upstairs banquet room. (*See* ¶1., *supra*.)

4. ¶9 of Def.'s Statement is disputed, as are all facts about Mr. Noonan's alcohol consumption, given that medical reports state that upon admission to Rhode Island Hospital, Mr. Noonan's blood sample revealed a concentration of 246mg/dl alcohol in blood serum. Such concentration equates to a blood alcohol concentration (BAC) of approximately 0.214%, or 2.7 times the 0.08% level at which, in Rhode Island, one is deemed to be under the influence of alcohol when driving a motor vehicle. (See H. Cohen Expert Report at 2, ¶9, attached hereto as *Ex. 4*; *see also* R.I. Hospital Medical Report, attached hereto as *Ex. 5*.) Moreover, Erica Pacheco, a waitress on duty at the Wharf Tavern on the evening of the incident, stated that Mr. Noonan was drinking alcohol other than wine at the downstairs bar during or shortly before the cocktail hour. (*See* E. Pacheco Deposition at 86, ll.20-25; 87, ll.1-4; 89, ll. 13-21; 102, ll. 14-25; 103, ll.1-12, attached hereto as *Ex. 6*.)

5. ¶10 of Def.'s Statement is disputed in that Mr. Noonan stated that he "probably" had a salad. (*See Ex. 3* at 32, ll.4-6.)

6. ¶11 of Def.'s Statement is disputed, as are all facts about Mr. Noonan's alcohol consumption, given that medical reports state that upon admission to Rhode Island Hospital, Mr. Noonan's blood sample revealed a concentration of 246mg/dl alcohol in blood serum. Such concentration equates to a blood alcohol concentration (BAC) of approximately 0.214%, or 2.7 times the 0.08% level at which, in Rhode Island, one is deemed to be under the influence of alcohol when driving a motor vehicle. (*See* ¶4, *supra*.)

7. ¶12 of Def.'s Statement is disputed in that Mr. Asciola stated that he honestly did not remember how many times he served Mr. Noonan. (*See Ex. 1* at 20, ll. 14-19.)

8. ¶18 of Def.'s Statement is disputed in that Mr. Gordon stated that he lost his footing when the railing he was holding onto while descending the stairs ended. (*See Ex. 3* at 42, l. 25 and 43-48, l. 17.)

9. ¶19 of Def.'s Statement is disputed in that the handrail did not "transition." There was a break between where the handrail for the top portion of the stairs ended and where another rail of a different type began for the bottom portion of the stairs. The rail for the bottom portion of the stairs had ropes attached to canvas tarps that covered the railing. (*See* ¶8, *supra*; *see also* J. Coniglio Expert Report of June 9, 2004 at 7-8; 12-13; and 16-19 with photographs, attached hereto as *Ex. 7*.)

10. ¶24 of Def.'s Statement is disputed only with regard to the time a blood sample was drawn because Plaintiff cannot discern that time from the Rhode Island Hospital admission record upon which Defendant relies.

11. ¶27 of Def.'s Statement is disputed in that this paragraph is not a fact, but, instead, a legal conclusion. The applicable building code governing the Wharf Tavern was R.I. Gen Laws §23-27.3-100.0 *et seq*.; more specifically here, §23-27.3-106.0-106.5. §23-27.3-106.1 provides "[i]f alterations or repairs are made within any twelve (12) month period, costing in excess of the *physical* value of said building, this Code's requirements for new structures shall apply" (emphasis added). Physical value is defined in §23-27.3-106.5 which further explains "replacement value".

12. ¶29 of Def.'s Statement is disputed in that Plaintiffs' experts have deemed the dimensions of the addition to be approximately, or in excess of, 3,561 square feet, based upon records on file with the Town of Warren. Those records further reveal that the addition was + or- 4,500 square feet and 5,390 square feet. Plaintiffs' expert John Coniglio has opined that the commercial property card of the Wharf Tavern property best depicts the dimensions of the addition. Based upon his inspection of the property and the commercial property card, he has estimated the addition to be approximately between 4,950 and 5,390 square feet, but closer to the 4,950 figure. Under any scenario, from 3,561 to 5,390 square feet, the cost of the addition exceeded 50%. In fact, Defendant's

expert, Albert Harkness, testified that he could not state with certainty where the interior of the addition ended. (*See Ex. 7* (April 12, 2006); *see also* J. Coniglio Deposition at 50, ll. 5-25; 51, ll. 1-14; and 74, ll. 1-18, attached hereto as *Ex. 8*; R. Keough Expert Reports of April 11, 2006 and July 6, 2006, attached hereto as *Ex.* 9; and Deposition of A. Harkness at 78, ll. 16-25; 79, ll. 1-10 and l. 25; and 80, ll. 1-12, attached hereto as *Ex. 10*.)

13. ¶33 of Def.'s Statement is disputed in that Mr. Keough has deemed the dimensions of the addition to be approximately, or in excess of, 3,561 square feet, based upon records on file with the Town of Warren and the April 12, 2006 expert report of John Coniglio. Those records and Mr. Coniglio's expert report were the bases of Mr. Keough's April 11, 2006 report that the dimensions of the addition were approximately 5,390 square feet. (*See Ex. 9*; *see also* R. Keough Deposition at 32, ll. 17-25; 33, ll. 1-10, attached hereto as *Ex. 11*.)

14. ¶34 of Def.'s Statement is disputed in that Mr. Keough's opinion of the dimensions of the addition contradicts Defendant's expert disclosure. (*See* ¶¶12 and 13, *supra*.)

15. ¶35 of Def.'s Statement is disputed in that Mr. Keough's testimony referred to in this paragraph was a response to a representation made by Defendant's counsel pertaining to whether "kitchen facilities" were included in the new addition. Whether kitchen facilities are included in the addition is a disputed fact, given testimony in this case that the addition contained a new bar. Whether a new bar and its equipment can be considered "kitchen facilities" is a disputed fact. (*See* R. Croteau Deposition at 59, ll.21-25; 63, ll.10-21, attached hereto as *Ex. 12*.)

16. ¶36 of Def.'s Statement is disputed in that Defendant has cited testimony in its "Ex. I" that refers to documents and is completely irrelevant to Defendant's statement in this paragraph. However, in the testimony of Mr. Croteau cited by the Defendant, Mr. Croteau admits that the deck was constructed between the time the building permit was issued (1986) and the time the certificate of occupancy was issued (1991.) This testimony comports with Mr. Keough's opinion that the deck was constructed at the same time the addition was constructed. (*See Ex. 12* at 14, ll. 5-9; *see also Ex. 11* at 23, ll. 16-25; 24 and 25, l.1.)

17. ¶37 of Def.'s Statement is disputed. Mr. Coniglio holds the degrees challenged by the Defendant. (See *Ex. 7* (June 9, 2004) at 1-2; see also *Ex. 8* at 7, ll. 12-25; 8-12, ll. 1-11.)

18. ¶38 of Def.'s Statement is disputed. Mr. Coniglio has opined that the commercial property card of the Wharf Tavern property best depicts the dimensions of the addition. Based upon his inspection of the property and the commercial property card, he has estimated the addition to be approximately between 4,950 and 5,390 square feet, but closer to the 4,950 figure. Moreover, Mr. Coniglio's inspection confirmed his opinion that the addition was approximately 4,950 square feet in area. (*See* ¶12, *supra*; *see also*

*Ex.89* at 47, ll. 1-11 and 49, ll.16-25.)

19. ¶40 of Def.'s Statement is disputed in that this paragraph is not a fact, but, instead, a legal conclusion.

20. ¶41 of Def.'s Statement is disputed in that this paragraph is not a fact, but, instead, a legal conclusion.

21. ¶42 of Def.'s Statement is disputed in that Defendant has cited testimony in its "Ex. K" that is completely irrelevant to Defendant's statement in this paragraph. Mr. Coniglio has determined that the cost of the 1991 addition mandated that the stairs and handrail comply with the State Building Code for new structures, pursuant to R. I. Gen. Laws §23-27.3-106.1. (*See Ex. 7* (April 12, 2006); *see also* ¶12, *supra*.)

22. ¶43 of Def.'s Statement is disputed in that Stuart Eddy testified that he had used the subject staircase many times and found it unsafe. Erica Pacheco, a waitress on duty at the Wharf Tavern on the evening of the incident, stated that tall people would have trouble descending the stairs because of the curtain in the middle of the stairs. (See Deposition of Stuart Eddy at 29, ll. 21-25; 30; and 31, ll. 1-15, attached hereto as *Ex. 15*; *see also Ex. 6* at 64, ll. 20-22.)

23. ¶44 of Def.'s Statement is disputed in that, pursuant to R. I. Gen. Laws §23-27.3-104, Defendant knew, or should have known, that it was responsible for the "safe and sanitary maintenance of the building or structure and its exitway facilities at all times . . . ." Moreover, Defendant should have known that the stairway was defective and/or dangerous by the mere fact that building permits filed with the Town of Warren require certification of conformance to all applicable codes and ordinances. Also, on file with the Town of Warren was an Inspection Report of the Deputy Fire Marshall in conjunction with the Building Inspector, dated December 23, 1974. That inspection revealed that the stairway identified in this case violated the Fire Safety Code because it was not enclosed. Also, the Inspection Report revealed a violation of no two approved means of egress from each level. Open stairways, under the Building Code after 1977, required conforming guards. (See 1986 Building Permit, attached hereto as *Ex. 13*; *see also* Inspection Report, attached hereto as *Ex. 14*; and *Ex. 7* (June 9, 2004) at 13, 18.)

PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS

24. Attendees at the Jesters meeting saw Plaintiff Gordon Noonan display visible signs of intoxication. (*See Ex. 2* at 22, ll. 3-25; 23; and 27, ll. 12-17; *see also Ex. 15* at 19, ll. 9-22; 20, ll. 10-18; and 28, ll. 22-25.)

25. Thirty-four members of the Jesters attended the function and the open bar bill was $886.00. *(See* Wharf Tavern Inc. Bill and Royal Order of Jesters Invitation, attached hereto as *Ex. 16*.)

26. There is no evidence that Michael Asciola was certified to serve alcohol on October 17, 2003 as indicated by Defendant's Response to Plaintiffs' Request for Production of "any and all diplomas, certificates or other acknowledgments evidencing that the individuals employed by the defendant to serve alcohol on October 17, 2003 had completed and/or participated in a TIPPS program or other course designed to train servers of alcohol in recognizing visible or subtle signs of intoxication." (*See Ex. 17,* attached hereto.)

27. Defendant's policy was to actively encourage its patrons to consume alcohol. (*See* Wharf Tavern Liquor and Wine Sales, attached hereto as *Ex. 18*.)

Plaintiffs,
GORDON NOONAN and
NANCY NOONAN,
By their attorneys,

PHILLIPS & D'ALOISIO

/s/Paul E. Phillips
____________________________________

Paul E. Phillips, Esquire (5094)
91 Friendship Street, Fourth Floor
Providence, Rhode Island 02903
(401) 453-5900
(401) 453-5903 facsimile

and

LAW OFFICE OF FRANK C. CORSO

/s/Frank C. Corso
_______________________________

Frank C. Corso, Esquire
Massachusetts BBO No. 545552
15 Court Square, Suite 240
Boston, Massachusetts 02108
(617) 227-0011
(617) 723-2032 facsimile
*Admitted Pro Hac Vice*

CERTIFICATION

I, the undersigned, hereby certify that I forwarded a copy of this document with exhibits via electronic filing on this 29th day of September, 2006 to:

Mark P. Dolan, Esquire
RICE DOLAN & KERSHAW
170 Westminster Street, Suite 900
Providence, Rhode Island 02903

David E. Maglio, Esquire
101 Dyer Street, Second Floor
Providence, RI 02903

/s/Paul E. Phillips, Esq. (5094)