# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND
C.A. NO. 05-150 S

GORDON NOONAN and NANCY NOONAN, :
:
Plaintiffs, :
:
vs. :
:
NEW WHARF TAVERN, INC., :
:
Defendant. :
- - - - - - - - - - - - - - - -

DEPOSITION OF GORDAN NOONAN
THE PLAINTIFF
TAKEN ON BEHALF OF THE DEFENDANT

DATE: December 14, 2005
TIME: 11:10 a.m. - 1:00 p.m.



6c94ede6-784f-11da-8a8e-000e2e34ab2d

Q Answers to Interrogatories have been filed in this case, answers to written questions that we had asked. The Answers to Interrogatories would indicate that as of the time of the fall at the Wharf Tavern, you were retired; is that correct?
A Yes.
Q From what profession were you retired, sir?
A Construction.
Q Did you own a construction company?
A Yes.
Q What was the name of that company?
A Investment Builders Associates.
Q Where was that out of?
A Providence.
Q Was that commercial construction?
A It was commercial, both commercial and residential.
Q At the time of this accident at the Wharf Tavern, did you own a home in Rhode Island as well as the -- this home in Florida?
A No.
Q Were you a full time Florida resident at the time?

A Yes.
Q Were you just up visiting in Rhode Island at the time?
A Yes.
Q So -- well, strike that.
How long had you been a full time Florida resident?
A 15 years.
Q And how long have you been retired?
A 19 -- when I was 65.
Q You've been retired since 1965?
A No, when I was 65.
Q Gotcha.
And how old are you now?
A 76.
Q Your wife is here today.
A Yes.
Q How long have you been married, sir?
A 18 years.
Q Do you have any children?
A No.
Q Do you remember the date of the incident at the Wharf Tavern?
A October 17, 2003.
Q Do you remember what day of the week

that was?

A A Friday, I believe.

Q Had you ever been to the Wharf Tavern before that day?

A Yes.

Q Approximately how many occasions had you been to the Wharf Tavern before?

A On several.

Q What's your best estimate in that regard?

A Oh, I -- 30 times.

Q You understand that some depositions have already been taken in this case, before this deposition today?

A No.

Q All right. A waitress or a wait staff/employee has given a deposition in this case. She testified that on the evening of your accident, you had spent some time downstairs, and you seemed to know -- and, in fact, introduced her to a waitress that you were familiar with.

Before the evening of the incident, did you know any of the wait staff, any of the waitresses or waiters at the Wharf Tavern by name?

A Maybe one or two.



6c94ede6-784f-11da-8a8e-000e2e34ab2d

Q All right. This young lady who gave a deposition testified that you had introduced her to a waitress by the name of -- I think it was Zalia (ph).

Do you remember a waitress by the name of Zalia there?

A Yes.

Q And given your visits to the Wharf Tavern before the evening in question, you had, I take it, had occasion to meet her and got to know her name?

A She'd be there for -- forever.

Q Now, on the evening in question, you were there in connection with a group that was having a function, the Royal Order of Court Jesters; is that correct?

A Yes, yes.

Q And how long, sir, approximately had you been a member of that organization?

A Five years.

Q Was there someone who had invited you to join?

A Yes.

Q And who was that, sir?

A I don't recall.

A Yes.

Q On any occasion, sir, before the evening of the incident, had you ever had occasion to go to the upstairs of the Wharf Tavern?

A Do you want to repeat that?

Q Sure. At any time before the day of your fall, had you ever been upstairs at the Wharf Tavern?

A Once.

Q In connection with what?

A A wedding reception.

Q Do you remember whose wedding that was?

A Yes.

Q And who was that?

A Frank Primiano (ph).

Q And do you remember approximately when that was?

A No.

Q Was it to your recollection, let's say, within the five years prior to your fall?

A Yes.

Q I'm just trying to, as best we can, get a best estimate.

Was it within the three years prior to your fall?

more than once during that wedding reception?

A No.

Q So your best recollection is -- with respect to that wedding reception, approximately three to five years prior to the date of this incident, you would have simply gone up the stairs to the reception, and then down the stairs at the conclusion of the reception?

A Yes.

Q Did you have -- do you recall having any problem or difficulty with that set of stairs on that prior occasion?

A No.

Q Do you recall noticing or noting any problem or defect or what you believe to be a dangerous condition with those stairs on that prior occasion?

A No.

Q Now, when you mentioned that you were in construction before your retirement, would that construction be for your own property, that you would own, or would you do construction by contract for third parties?

A When I was in business for myself, it was for my own.

to you that those medical records would reflect that you had had some alcohol to drink at some point that day before the accident.

MR. CORSO: Objection to form.

A No.

Q Are you -- certainly you're aware of the fact that a lawsuit has been filed against the Wharf Tavern.

A Yes.

Q And are you aware of the fact that one of the claims being made against the Wharf Tavern is that you were intoxicated at the time of the incident, and the Wharf Tavern was negligent in connection with your intoxication?

A No.

Q Well, I'll represent to you, sir, that the complaint filed on you and your wife's behalf, in the United States District Court for the District of Rhode Island, alleges in part that you were intoxicated at the time of the incident, and that the Wharf Tavern was negligent in its service of the alcohol to you. Okay? And I need to, as a result, ask you some questions about alcohol consumption. All right?

A Yes.



6c94ede6-784f-11da-8a8e-000e2e34ab2d

Q Did you have any alcohol to drink that day, either at lunch or at home or anywhere else prior to your arrival at the Wharf Tavern?
A No.
Q Is that something you recall specifically or is that something you don't recall?
A I don't do that during the day.
Q Okay. Well, some people, you know, have a cocktail before they go out to dinner.
And I guess I would ask the question, do you recall whether or not you had a cocktail or any other type of alcohol before you left for the Wharf Tavern that night?
MR. CORSO: Objection to form.
A Before I left?
Q Before you left for the Wharf Tavern.
A No.
Q And that's something you recall specifically, that you did not have any alcohol to drink at any time that day, prior to your arrival at the Wharf Tavern; is that correct?
A No.
Q No, meaning you did not.
A I did not.
Q Okay. Did you have anything to eat

You do remember speaking with the bartender about the apartment?

A Right.

Q Do you remember what you had as an entree that night?

A Probably a salad.

Q Well, hopefully you had something more than a salad.

Do you remember what you had for your main course?

A Shrimp.

Q What time did the incident happen, sir?

A Oh, I really don't recall.

Q What's your best recollection? If you arrived at --

A 9:30.

Q 9:30 about?

A 10 o'clock.

Q Do you know, were your wife and Mrs. Eddy back by that time?

A Yes.

Q Had you had occasion to see her that night? Had she come up and, you know, sort of signaled that she was back?

A No.

Q And how long did that last approximately?
A Oh, a half hour.
Q And did you have anything to drink during the cocktail hour?
A I had a glass of wine.
Q Do you remember what kind of wine?
A Red wine.
Q And then everyone sat down for dinner?
A Then we sat down for dinner.
Q Did you have anything to drink during dinner?
A I had another glass of wine.
Q The first glass of wine that you had to drink during the cocktail hour, is that something that you got from the bar?
A We had our own bar upstairs.
Q Right. But was that something you got from the bar upstairs?
A Yes.
Q Is that when you had occasion to speak with the bartender, during the cocktail hour?
A No.
Q When during the course of the evening did you have that conversation with the bartender?

A Yes.

Q Do you remember where you were in relation to the -- well, strike that.

It's fair to say that that set of stairs was approximately five feet in width; is that fair?

A Yes.

Q Can you approximate for me the number of steps on that stairway?

A No.

Q You were going down at the time, correct?

A Yes.

Q From the top of the stairs looking down, were you toward the center of that five-foot width of stairs or were you to the left or to the right; do you remember?

A To the right, halfway -- about halfway down.

Q So when you were descending that set of stairs of that approximate five-foot width, you were to the right when you were going down?

A Yes.

Q Was there anyone else on the stairway when you were descending the stairs?

A Yes.

Q No. You're going down the stairs, correct?
A Yes.
Q And you're on the right-hand side, approximately halfway down the stairs, correct?
A Yes.
Q And you're holding onto the handrail with your right hand.
A Right.
Q How did you come to begin to fall? What happened?
A I looked over to see if I could see my wife, and all of a sudden the railing -- the railing ended, and I lost my footing. And then I started to fall.
Q Okay. So you were halfway down the stairs and you were looking for your wife where?
A To the cocktail lounge, to the right.
Q Were you bent forward, down?
A I don't recall if I -- I don't believe I bent down.
Q If you're halfway down the stairs standing erect, you can't see in the cocktail lounge, can you?
A They were sitting in the chairs.

Q Had you had any problem walking up the stairs going to dinner that night?

A No.

Q Had you had any problem going down the stairs immediately prior to when you began to fall?

A No.

Q All right. You said that when you were approximately halfway down the stairs, you looked to the left to see if you could see where your wife was.

A Yes.

Q Were you speaking with anyone on the stairs at the time?

A No.

Q Did you see your wife at any point that night while you were on the stairs?

A No.

Q Were you looking left when you lost your balance?

A Yes.

Q Do you remember whether you were stepping downwards with your left foot or your right foot when you lost your balance? And if you don't know or don't recall, you can simply --

A I don't recall.

else who has had any problem on that stairway at the Wharf Tavern at any time, other than yourself on the day of the incident?

A No.

Q Is it, sir, your contention in this case that that handrail had something to do with your fall?

A Yes.

Q Is it your contention that anything about this stairway, other than the handrail, had anything to do with your fall?

A (No verbal response.)

Q Do you understand the question?

A Yes.

Q Do you contend that there was anything about the stairway that caused or contributed to your fall other than the handrail?

A No.

Q And if I understand it, your contention is that the handrail terminated at a point prior to the bottom of the stairs, and that caused or contributed to your losing your balance; is that correct?

A Yes.

Q Now, you were in Rhode Island Hospital