# EXHIBIT H

MPD:lab 03-369

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

GORDON NOONAN AND NANCY NOONAN :

vs. : C.A. No. 05-150 S

NEW WHARF TAVERN, INC. :

**DEFENDANT NEW WHARF TAVERN, INC.'S EXPERT DISCLOSURE**

At this time, New Wharf Tavern, Inc. may call the following witnesses at the time of trial in this case:

1. Dennis C. Hilliard, M.S., Adjunct Assistant Professor, University of Rhode Island.

Mr. Hilliard's opinions in summary are as follows:

Gordon Noonan, (weight 170 pounds) was involved in a slip and fall incident on October 17, 2003 at 10:00 pm. He was taken to Rhode Island Hospital in Providence, where a blood sample was drawn at 10:55 pm on which an ethyl alcohol analysis was performed. The Laboratory reported and Ethyl Alcohol result of 246 MG/DL.

Rhode Island Hospital Laboratory performs its alcohol analysis on blood serum, rather than whole blood. The reported result needs to be adjusted in order to relate this value to whole blood alcohol values used in determining levels of intoxication and impairment. The resulting whole blood alcohol concentration (BAC) equivalent value is calculated to be: 0.208%.

In order for a normal person who weighs 170 pounds to attain a BAC of 0.208%, that person would have to consume 10 glasses of wine in one hour. This is based on the assumption that each glass of wine contains one-half ounce of ethyl alcohol. Based on the information provided that the time of last drink consumed was between 9:50 and 10:00 pm, a normal person would have metabolized the alcohol content of 0.67 of a drink from that time to the time of the blood draw. If the drinking session started at 6:15 pm, that person would have metabolized the alcohol from 2.33 drinks. For this scenario, a normal person weighing 170 pounds would have

to consume between 12 to 13 drinks from 6:15 pm in order to attain a BAC level of 0.208% at 10:55 pm.

Based on the alcohol level reported by Rhode Island Hospital and the assumption that Mr. Noonan had not consumed alcohol within one hour of the accident and had little or no food consumption within one (1) hour of the time of the accident, his BAC at the time of the accident (approximately 10:00 pm) is calculated to have been 0.223%. If Mr. Noonan had been drinking up to the time he was leaving the Wharf Tavern, he would have had a peak BAC at 10:30 – 11:00 pm. His BAC at 10:00 pm would have been lower than 0.208% but not less than 0.015%.

Based on the scenario provided by Mr. Noonan, that he only consumed two glasses of wine at the Wharf Tavern between 6:15 and 10:00 pm, his BAC would have been less than 0.02% at 10:55 pm.

Mr. Hilliard's opinions and conclusions are based on his education, training and experience. A copy of his Curriculum Vitae is attached hereto as Exhibit A. His opinions and conclusions are also based on his review records, including records relating to plaintiff's treatment at Rhode Island Hospital following the fall and the plaintiff's deposition transcript.

2. Ronald Beaumier, C & L Builders, Inc.

Mr. Beaumier has estimated the value of the construction of the addition to the existing Wharf Restaurant, which was constructed in 1991. Mr. Beaumier has also valued the existing structure at the time of the addition in 1991.

Mr. Beaumier's estimates reflect that the value of the restaurant addition, as of 1991, is less than fifty percent (50%) of the value of the existing building value. The addition is estimated as 3,388 square feet. The existing one or two story structure is estimated at 7,582 square feet. The 1991 addition project does not include the value of the base for the addition, nor residing or reshingling of the existing structure.

One way of estimating the respective values of the addition versus the existing building would be as follows:

Restaurant Addition – Approximately 41 1/2' x 81 1/2'
One Story: 3383 sq. ft.

Super Structure

| | | |
|---|---|---|
| 1. | Roof | 3388 sq. ft. x $1.67 = $ 5,649.61 |

Exterior Closure

| | | |
|---|---|---|
| 1. | Walls | 3383 sq. ft. x $3.72 = $ 7,302.76 |
| 2. | Doors | 3383 sq. ft. x $3.03 = $ 10,350.49 |
| 3. | Windows | 3383 sq. ft. x $4.88 = $ 16,509.04 |

Roofing

| | | |
|---|---|---|
| 1. | Roof Cover | 3383 sq. ft. x $2.68 = $ 9,066.44 |
| 2. | Insulation | 3383 sq. ft. x $0.78 = $ 2,638.74 |

Interior Construction

| | | |
|---|---|---|
| 1. | Partitions | 3383 sq. ft. x $1.50 = $ 5,074.50 |
| 2. | Wall Finishes | 3383 sq. ft. x $1.14 = $ 3,856.62 |
| 3. | Floor Finishes | 3383 sq. ft. x $6.00 = $ 20,298.00 |
| 4. | Ceiling Finishes | 3383 sq. ft. x $3.93 = $ 13,295.19 |

Mechanical

| | | |
|---|---|---|
| 1. | Plumbing | 3383 sq. ft. x $6.78 = $ 22,936.74 |
| 2. | HVAC | 3383 sq. ft. x $8.07 = $ 27,300.81 |

Electrical

| | | |
|---|---|---|
| 1. | Service and Distribution | 3383 sq. ft. x $1.09 = $ 3,687.47 |
| | Light/Power | 3383 sq. ft. x $5.14 = $ 17,388.62 |
| | Emergency Lights | 3383 sq. ft. x $0.59 = $ 1,995.97 |
| | | $169,150.00 |

General

| | |
|---|---|
| Overhead and Profit | $ 25,372.50 |
| | $194,522.50 |

$194,522.50
$ 57.50 per sq. ft.
3,383 sq. ft.

Existing One and Two Story Structure – Approximately 7,582 sq. ft.

Foundations

| | | |
|---|---|---|
| 1. | Footing and Foundation | 4327 sq. ft. x $3.86 = $ 16,702.22 |
| 2. | Excate and Backfill | 4327 sq. ft. x $0.93 = $ 4,024.11 |

Substructure

| | | |
|---|---|---|
| 1. | Slots on Grode | 4327 sq. ft. x $2.64 = $ 11,423.28 |

Superstructure

| | | |
|---|---|---|
| 1. | Columns & Beams | 7582 sq. ft. x $0.16 = $ 1,213.12 |
| 2. | Roof | 3255 sq. ft. x $1.67 = $ 5,435.85 |

Exterior Closure

| | | |
|---|---|---|
| 1. | Walls | 7582 sq. ft. x $2.72 = $ 20,623.04 |
| 2. | Doors | 7582 sq. ft. x $3.03 = $ 22,973.46 |
| 3. | Windows | 7582 sq. ft. x $4.88 = $ 37,000.16 |

Roofing

| | | |
|---|---|---|
| 1. | Roof Cover | 4327 sq. ft. x $2.68 = $ 11,596.36 |
| 2. | Insulation | 4327 sq. ft. x $0.78 = $ 3,375.06 |
| 3. | Specialties/Openings | 4327 sq. ft. x $0.40 = $ 1,730.80 |

Interior Construction

| | | |
|---|---|---|
| 1. | Partitions | 7582 sq. ft. x $1.50 = $ 11,373.00 |
| 2. | Interior Doors | 7582 sq. ft. x $1.06 = $ 8,036.92 |
| 3. | Wall Finish | 7582 sq. ft. x $1.14 = $ 8,643.48 |
| 4. | Floor Finish | 7582 sq. ft. x $6.00 = $ 45,492.00 |
| 5. | Ceiling Finish | 7582 sq. ft. x $3.93 = $ 29,797.26 |
| 6. | Interior Surface/Ext. Wall | 7582 sq. ft. x $1.22 = $ 9,250.04 |

Mechanical

| | | |
|---|---|---|
| 1. | Plumbing | 7582 sq. ft. x $6.78 = $ 51,405.96 |
| 2. | HVAC | 7582 sq. ft. x $8.07 = $ 61,186.74 |

Electrical

| | | |
|---|---|---|
| 1. | Service and Distribution | 7582 sq. ft. x $1.09 = $ 8,264.38 |
| 2. | Light/Power | 7582 sq. ft. x $5.14 = $ 38,971.48 |
| 3. | Emergency Lighting | 7582 sq. ft. x $0.59 = $ 4,473.38 |
| | | $412,992.10 |

General

Overhead and Profit – Fifteen percent (15%) $ 61,948.82

$474,940.92*

$474,940.92
$ 62.65 per sq. ft
7,582.00 sq. ft.

*The figure does not include the value of the base for the addition.

Existing Building

| | | |
|---|---|---|
| First Floor: | 59 1/2' x 40' | 2,380.00 sq. ft. |
| | 26' x 31' | 806.00 sq. ft. |
| | 5 1/2' x 12' | 66.00 sq. ft. |
| | 5 1/2' x 12 1/2' | 68.75 sq. ft. |
| | 15' x 31' | 465.00 sq. ft. |
| | 11' x 23' | 253.00 sq. ft. |
| | 18' x 16' | 288.00 sq. ft. |
| | | 4,326.75 sq. ft. |
| Second Floor: | 59 1/2' x 40' | 2,380.00 sq. ft. |
| | 26' x 31' | 806.00 sq. ft. |
| | 5 1/2' x 12 1/2' | 68.75 sq. ft. |
| | | 3,254.75 sq. ft. |

| | | |
|---|---|---|
| Existing Building | | 7,582 sq. ft. |
| Addition | | 3,383 sq. ft. |
| | Total | 10,965 sq. ft. |

Mr. Beaumier reserves the right to amend and/or supplement his estimates as additional information is received.

Mr. Beaumier's opinions are based on his education, training and experience. A copy of his Curriculum Vitae is attached hereto as Exhibit B. Mr. Beaumier has also based his opinions on multiple site inspections at the Wharf Tavern.

3. Phillip R. Waier, P.E., RS Means, 63 Smith Lane, Kingston, MA 02364

Mr. Waier has conducted a construction cost comparison of the Wharf Tavern both before and after construction of the single story addition in 1991. Mr. Waier notes the dimensions of the two story building prior to the addition are as follows:

| | | | |
|---|---|---|---|
| First Floor | Main Area | 59' – 6" x 40" = | 2380 square feet |
| | | 26' x 31" = | 806 |
| | | 5' – 6" x 12' = | 66 |

| | | | |
|---|---|---|---|
| | 5' – 6" | x 12'-6" = | 68.75 |
| | 15' | x 31' = | 465 |
| | 11' | x 23' = | 253 |
| | 18' | x 16' = | 288 |
| | Total | | 4326.75 |
| Second Floor | 59'-6" | x 40' = | 2380 |
| | 26' | x 31' = | 806 |
| | 5' – 6" | x 12'-6" = | 68.75 |
| | Total | | 3254.75 |

Therefore the area of the building prior to the addition is 7,582 square feet.

The dimensions of the one story addition are 41' – 6" x 81' – 6" = 3383 square feet. If the construction cost in $/square feet for all construction is equal it is apparent from the dimensions that the addition represents a forty-three percent (43%) increase in value.

In addition to simply comparing the dimensional differences, Mr. Waier has prepared a cost comparison based on national average costs, as reflected in RSMeans Published Cost Data localized to Warren, R.I.

The aforementioned analysis unitizes RSMeans Square Foot Cost Data which provides a cost breakdown for a typical restaurant. The national average cost for 7800 square foot freestanding restaurant with wood siding and wood frame construction is $86.60 per square foot. Those costs include all elements of such a restaurant including foundations, slab on grad, framing, interior construction, plumbing and HVAC. Including all those elements, the approximate value of the restaurant before the addition is:

$86.60 per square feet x 7782 square feet - $673,921.00.

The 331 square foot addition is a three sided structure that abuts the existing structure. The structure was constructed on a pre-existing slab that is constructed on woodpiles. As a result, only three sides of existing closure were required and no foundations or slab or grade was needed. This reduces the total restaurant cost by $4.79 per square foot, and reduces exterior closure by thirty-three percent (33%) or $2.50.

Similarly, the addition is just one large room. This allowed deductions of items such as partitions ($1.50), interior doors ($1.06), wall finishes ($1.14), and plumbing ($6.78) which totals $10.48 per square foot. Since the building was existing, the electrical service feed would be pre-existing at $1.09 per square foot. The sum of the above deductions is $18.86 per square foot.

Therefore, the approximate cost of the addition is $96.00 per square foot - $18.86 per square foot - $77.14. The national average cost of the addition is $77.14 x 3383 = $260,964.00.

The above reflects only one analysis to estimate the comparative cost of the 1991 addition versus the value of the existing building. Under any analysis, however, it is clear that the addition is less than fifty percent (50%) of that value.

Mr. Waier reserves the right to amend and/or supplement his estimates as additional information is received.

Mr. Waier's opinions are based on his education, training and experience. A copy of his Curriculum Vitae is attached hereto as Exhibit C. Mr. Waier has also based his opinions on a site inspection at the Wharf Tavern.

4. <u>Tito Harkness, Albert Harkness & Associates, 2 Central Street, Ipswich, MA 01938</u>.

It is Mr. Harkness' understanding that Mr. Noonan fell from the top of the stairs. However, Mr. Noonan testified at his deposition that he fell from a point about halfway down the stairs, towards the right side of the stairway. He claims that he was holding onto the handrail with his right hand, then lost his footing because the rail ended.

Based on Mr. Harkness' inspection, the stairs consist of 17 risers, of which the upper 8 risers are 43" wide with solid walls on both sides. The lower 9 risers are 48" wide and project into the main dining space.

There are wood handrails mounted to the walls on both sides of the upper 8 risers, mounted approximately 28" above the tread nosings. The upper handrails consist of a traditional handrail cross-section measuring 2 1/4" wide by 2 1/4" high. There are 1 3/4" diameter wood handrails mounted approximately 28" above the tread nosings of the lower 9 risers, with canvas sheeting stretched between the handrails and the stair stringers to enclose the intervening space.

The bottom ends of the rails at the upper part of the stairs' rails line up with the upper ends of the lower rails, and the lower railings start at the point where the upper railings end (see photographs, attached). Effectively there is a railing available continuously along the length of both sides of the stairs, although the lower railings are offset laterally by approximately 3".

All of the treads consist of varnished hardwood. The flooring at the upper landing is quarry tile; the lower dining area floor is covered with commercial carpet.

The tread and riser dimensions are as follows, starting from the top (step 1):

| | Riser | Tread | | Riser | Tread |
|---|---|---|---|---|---|
| Step 1 (top) | 7 7/8" | 10" | Step 10 | 6 5/8" | 10" |
| Step 2 | 6 1/2" | 9 3/4" | Step 11 | 6 5/8" | 10" |
| Step 3 | 6 1/2" | 10 1/4" | Step 12 | 6 3/4" | 9 7/8" |
| Step 4 | 6 1/2" | 10 1/4" | Step 13 | 6 3/4" | 10 1/4" |
| Step 5 | 6 1/2" | 10" | Step 14 | 6 7/8" | 9 7/8" |
| Step 6 | 6 1/2" | 10" | Step 15 | 6 5/8" | 10 1/4" |
| Step 7 | 6 5/8" | 10 1/4" | Step 16 | 6 1/2" | 10" |
| Step 8 | 6 5/8" | 9 3/4" | Step 17 | 5 1/2" – 5 3/4" | (bottom) |
| Step 9 | 6 5/8" | 10" | | | |

Mr. Harkness' understanding is that the Wharf Tavern building dates from 1895, and that the Wharf Tavern has been operating as a restaurant since 1955. Records at the Warren Building Department indicate that second floor was converted to a dining room in 1956. Based on available records, it appears that the stairway has been in existence since that time. There are no records which would indicate that significant changes have been made to the stair during the intervening period.

The 7th edition of the Rhode Island State Building Code, published in 1998, was in effect on the date of the accident. The State Building Code first became effective in 1977, and states that the occupancy of any existing structure may continue without change except as may be deemed necessary by the building official.

Mr. Harkness' understanding is that proposed liability experts on behalf of Mr. Noonan have offered the opinion that the entire building was required to be upgraded to the requirements of the Rhode Island State Building Code in effect.

Both of the expert reports were based on review of records obtained from the Warren Building Department, and provided cost estimates which purport to indicate that construction work exceeding 50% of the building value was done within a 12 month period.

Based on Mr. Harkness' review of building records and information from the original owner and builder, the addition in question was built in 1991. At that time, the 1984 edition of the Rhode Island State Building Code was in effect. That code required that when alterations

were made exceeding 50% of the building value, the requirements of the current code for new structures would apply to the building. However, costs of painting, decorating, and landscaping, as well as electrical, mechanical, and plumbing systems were not to be included on the calculation of the alteration cost.

The value of the existing building was to based on current replacement value of the building prior to alteration.

As indicated by the opinions of construction cost estimating experts, the cost of the addition did not approach 50% of the replacement cost of the building. Based on my review, there has been no other addition or alteration of sufficient magnitude to trigger the above requirement.

Accordingly, Mr. Harkness' opinion is that the stairway in question is grandfathered under the Rhode Island State Building Code.

There was no property maintenance code in effect at the time of the accident in 2003. Nevertheless, the 2003 International Property Maintenance Code, as adopted in 2004 after Mr. Noonan's accident, contains no provision which would require that handrails be continuous and uninterrupted for the length of the stairway.

The Rhode Island Fire Safety Code states that the State Fire Marshall is the authority having jurisdiction and has the authority to approve the adequacy of means of egress. The Warren Fire Chief, as the representative of the State Fire Marshall, has on numerous occasions inspected the premises. There is no record of any inspection in which he cited the handrail in question as being inadequate or improper in any respect.

Although not applicable for the reasons described above, the 1984 Rhode Island State Building Code was not clear regarding the intent of the requirement for "continuous guards and handrails." The working could be (and has been) interpreted to mean "continuing along the full length of the stairs," rather than "continuous and uninterrupted."

Mr. Harkness reserves the right to amend and/or supplement his estimates as additional information is received.

Mr. Harkness' opinions are based on his education, training and experience. A copy of

his Curriculum Vitae is attached hereto as Exhibit D. Mr. Harkness has also based his opinions on multiple site inspections at the Wharf Tavern.

Mark P. Dolan, Esq., Reg.# 3280
Rice Dolan & Kershaw
Attorneys for Defendants
170 Westminster Street, Suite 900
Providence, RI 02903
(401) 272-8800

CERTIFICATION

I hereby certify that a copy of the within document has been faxed and mailed to counsel of record, as follows, on May 19, 2006:

Frank C. Corso, Esq.
Law Offices of Frank C. Corso
15 Court Street
Boston, MA 02108

Paul E. Phillips, Esq.
Phillips & D'Alosio, Esq.
91 Friendship Street, 4th Floor
Providence, RI 02903

David E. Maglio, Esq.
David E. Maglio and Associates
101 Dyer Street
Providence, RI 02903

# EXHIBIT A

# CURRICULUM VITAE

NAME Dennis C. Hilliard

ADDRESS Fogarty Hall, Room 220
41 Lower College Road
Kingston, RI 02881-1966

TELEPHONE 401-874-2893
FAX 401-874-4868
E-MAIL dch@uri.edu

EDUCATION Master of Science, Pharmacology and Toxicology, 1980
University of Rhode Island, Kingston, RI

Bachelor of Science, Biochemistry, 1976
University of New Hampshire, Durham, N.H.

Forensic Application of DNA Typing Methods, 1993
Adv. Methods in Biochemical Bloodstain Analysis, 1986
University of Virginia/FBI Academy, Quantico, VA

EMPLOYMENT

5/18/95 to Present: Director - State Crime Laboratory & Adjunct Assistant Professor – Biomedical and Pharmaceutical Sciences, College of Pharmacy, University of Rhode Island, Kingston, RI: Administration of the State Crime Laboratory. Function as a Criminalist covering four areas of forensic examinations and testify as an expert witness in courts of law. Prepare, organize, implement and lecture in educational programs for the law enforcement community and the undergraduate and graduate students at the University of Rhode Island. Act as liaison with the State Department of Health Laboratories. Testify before various state commissions and committees on the operation and funding of the Laboratory

5/1/99 to Present: Co-Director - Forensic Science Partnership, University of Rhode Island, Kingston, RI: Administer, in conjunction with two other Co-Directors, manage a $450,000, three-year University of Rhode Island development grant, to encourage research and student programs in the area of forensic science.

2/24/92 to 5/17/95: Acting Director - State Crime Laboratory & Assistant Professor - Biomedical Sciences, College of Pharmacy, University of Rhode Island, Kingston, RI: See above.

9/1/90 to 2/23/92: Adjunct Assistant Professor - Pharmacology & Toxicology, College of Pharmacy, University of Rhode Island, Kingston, RI: Participate in educational programs for the law enforcement community and the undergraduate and graduate students at the University of Rhode Island.

6/24/84 to 2/23/92: Criminalist – State Crime Laboratory, Kingston, RI: Perform examinations on evidence submitted to the Laboratory by law enforcement agencies. Prepare reports, compile quarterly and yearly statistics on cases submitted and testify as an expert witness in courts of law.

4/4/83 to 6/23/84: Toxicologist - RI Department of Health, Division of Laboratories, Providence, RI: Perform examinations on biological and solid dose samples from the Medical Examiner and law enforcement agencies for the presence of drugs and toxic substances. Prepare of reports and testify as an expert witness in courts of law.

3/16/80 to 11/13/82: Chemist/Criminalist - State Crime Laboratory, Kingston, RI: See above.

2/80 to 7/80: Technician III - Emergency Biochemistry Laboratory, Rhode Island Hospital, Providence, RI: Perform clinical analysis on biological samples submitted at the request of physicians treating ER patients.

## PROFESSIONAL AFFILIATIONS

| | |
|---|---|
| AAFS: | American Academy of Forensic Sciences |
| ASCLD: | American Society of Crime Laboratory Directors |
| IAI: | International Association of Identification |
| NEAFS: | Northeastern Association of Forensic Scientists, President-Elect, 2005 Annual Meeting Program Chair |
| NECLD: | New England Crime Laboratory Directors |
| NEDIAI: | New England Division International Association of Identification |
| RICA: | Rhode Island Criminalistics Association, Treasurer |
| RIDA: | Rhode Island Detectives Association |
| RIIAAI: | International Association of Arson Investigators, RI Chapter, Board Member |
| RILETA: | Rhode Island Law Enforcement Trainer's Association |
| RIPCA: | Rhode Island Police Chiefs Association |

## INVITED LECTURES AND SYMPOSIA

Since 1977, lectured in programs and class forums for law enforcement, law schools, primary and secondary education schools, legal and scientific organizations and community groups on various topics in forensic sciences including the functions of the RI State Crime Laboratory, breath alcohol analysis, driving under the influence of alcohol and/or drugs, standardized sobriety test procedures, forensic DNA analysis, the collection & preservation of physical evidence, the examination & use of scientific evidence in court and the role of the expert witness.

TESTIMONY

Since 1980, testified 113 times in the state and federal courts of Rhode Island. Qualified by the court as an expert witness to give opinion evidence in five specialty fields of forensic science: fire debris analysis for accelerants, basic serology, DNA testing, hair & fiber analysis and blood alcohol.

PUBLICATIONS

Hilliard, D. and Defanti, D., Certification of Breath Testing Operators and Instrumentation for DWI Cases in the State of Rhode Island, Proceedings of the International Symposium on Driving Under the Influence of Alcohol and/or Drugs:
p. 143, 1986

Hathaway, R. and Hilliard, D., Spud Gun, AFTE Journal:
p. 169, vol. 26, no. 3, July 1994

Revised 3/13/2006

# EXHIBIT B

# Ronald A. Beaumier - 3rd Vice President

## C & L Builders, Incorporated

I, Ronald A. Beaumier, respectfully submit the following information regarding my activities and experience.

Since 1967 I have been actively involved in the construction industry with time out to serve in the United States Army. In 1978 I joined C & L Builders, Inc. and have been actively engaged in the construction industry. Our work consists of renovations and remodeling and a large volume of fire restoration and damages caused by oil spillage in both commercial and residential properties. Our total sales contracts have exceeded two and one half million dollars per year.

I served in the United States Army, Infantry Division, on active duty overseas. I received an Honorable Discharge in 1971. After my discharge I worked in the industry before attending the Hall Institute from which I received my degree in Architectural Drafting and Design.

Presently I am Third Vice President of C & L Builders, Inc. We employ skilled carpenters, painters, plumbers and helpers. Our staff has varied from approximately 15 to 44 employees; we are fully equipped to handle the type of work that we are engaged in.

We are registered and or licensed in the states of Rhode Island, Massachusetts and Connecticut. I also hold a Construction Supervisors license in the state of Massachusetts.

In addition to my actual construction experience I have also engaged in providing insurance companies, builders, attorneys, and individuals with property damage appraisals.

Since starting this service in 1963 we have evaluated and appraised property damage in excess of ten million dollars yearly and property valuations in excess of twenty million dollars in most years. We have appraised various size losses with the single largest loss exceeding eight million dollars.

(2)

Some of the insurance companies for whom we have provided these services are FMG, Amica Mutual Insurance, Aetna Insurance, Liberty Mutual Insurance, Andover Insurance Companies, Kemper Insurance, Travelers Insurance, Crawford & Company, Home Insurance, Allstate Insurance, INA, CNA, Providence Washington Insurance, Hanover Insurance, Worcester Mutual Insurance, National Flood Insurance, Massachusetts Bay, Sentury Claims Service, Currier-Marx Claims Service, Pelletier & Rourke Adjusting Company, O'Leary Claims Service, McDonald Claim Service, Rhode Island Joint Reinsurance, St. Paul Insurance, Allied Adjustment, Underwriters Adjusting Company, Royal Insurance, and GAB Robins.

We have also been retained as relocation consultants for the Redevelopment Agency of Woonsocket, the Redevelopment Agency of Brockton and the Redevelopment Agency of Attleboro.

Another form of dispute settlement in which I have been qualified is the Appraisal Reference Procedure. I have been qualified as an expert witness in Rhode Island and Massachusetts.

I have also been qualified as an expert witness in the processes of Court Annexed Arbitration, Binding Arbitration and Alternate Dispute Resolution court proceedings.

In addition to the Rhode Island area, we provide services throughout Connecticut and Massachusetts. We have also provided our services in upstate New York, Vermont, New Hampshire, Maine and New Jersey. We have been retained to perform appraisal services in St. Croix, the Virgin Islands, for damages caused by Hurricane Hugo in 1990.

In 1991 we provided a number of insurance companies with approximately sixteen hundred appraisals for damages caused by Hurricane Bob. In 1992 we were retained by Amica Mutual Insurance Company to provide a staff of five personnel to adjust large losses suffered by their insureds in eastern Florida caused by Hurricane Andrew.

We were retained by FM Global Insurance to appraise several buildings in New York City, due to events of September 11, 2001.

C & L Builders, Inc. activities have included work in the states of Massachusetts and Connecticut in addition to Rhode Island. C & L Builders, Inc. has been in the first 200 of the top 500 contractors listed in Qualified Remodeler Magazine since 1987.

C & L Builders, Inc. is listed with Dun & Bradstreet and is a member of the Better Business Bureau, the Rhode Island Builders Association and the National Association of Home Builders.

August, 2002

{FILENAME * MERGEFORMAT}

# EXHIBIT C

# Phillip R. Waier, P.E.
Principal Engineer

Education:
B.S., Civil Engineering, University of Windsor, 1967
M.S., Civil Engineering, Villanova University, 1972

Professional Registrations:
Registered Professional Engineer, Rhode Island and Massachusetts

Professional Affiliations:
Associated General Contractors of Massachusetts
Associated Builders and Contractors
Member USGBC

Experience:

RS Means/Reed Construction Cost Data, July 1989 - Present
Principal Engineer
Technical and editorial responsibility for five cost data books including the Means Building Construction Cost Data and Means Facilities Maintenance and Repair Cost Data. Formulated the design and content of the Means Facilities Maintenance and Repair and managed its production. Manage the activities of editors, cost researchers and consultants updating and analyzing portions of the database and the delivery of cost consulting services to national firms. Review all work and documentation before delivery of product. Technical editor for reference books such as *The New ADA Compliance and Costs, Green Building: Project Planning and Cost Estimating and PM for Higher Education*. Editorial responsibilities also include authoring chapters in *Cost Planning and Facilities Maintenance* published by R.S. Means and *Maintenance Staffing Guidelines for Educational Facilities* published by Association for Higher Education Facilities Officers. Other activities include international cost and database consulting projects and presentation of professional development seminars. The seminars focused on estimating and construction project management include: Unit Price Estimating, Scheduling and Project Management, Square Foot Estimating, and Facilities Maintenance and Repair Estimating.

Janus Incorporated, Chelsea, MA, 1978 - 1989
President and Chief Engineer for a mechanical contractor specializing in process piping, petroleum piping, oil storage tank repairs, industrial and commercial sprinkler systems, site remediation and related activities. Provided design and construction services to clients such as Mobil, Texaco, Delta Airlines, and the U.S. Postal Service. Engaged in all aspects of business, both short and long range corporate decisions, and the day-to-day running of the business including financial matters, insurance programs and the personnel function. Shared profit and loss responsibility with the owners.

Estimated jobs, prepared bids, negotiated subcontractor agreements, managed projects (schedules, manpower planning, subcontractor coordination, purchasing and site supervision). Managed preparation of engineering drawings. Developed and implemented marketing plans, with an emphasis on diversification/expansion of services. Made sales presentations and networked within trade organizations to develop opportunities. Diversification into site remediation and commercial fire protection increased sales 20%.

John Mutch Company, Norwood, MA, 1976 - 1977
Project Manager for commercial and industrial general construction projects at Foxboro, Polaroid, Mobil Oil and others. Total responsibility for project management from initial client contact to estimating, bidding, scheduling, and subcontracting.

Charles T. Main/Metcalf and Eddy, Inc., Boston, MA, 1973 - 1976
Structural Engineer for major foreign and domestic municipal and industrial projects. Responsible for structural design from basic planning through all phases of design to erection. The diversified project list includes Pulp and Paper, Chemical Process, Sewerage Treatment and Printing Plants.

Mobil Oil Corporation, Fairfax, VA, 1970 - 1973
Wholesale Plant Engineer. Managed major construction and renovation projects at bulk storage terminals. Total project responsibility for planning, design, estimates, bid packages and construction contracts. Projects included modifications to piping, pumping, and electrical systems and construction of new marine facilities and jet fuel filtration systems.

Project Engineer. Managed the construction of new service stations and renovations to existing facilities. Typical projects included car wash locations, convenience stores, typical service stations and renovations that included architectural changes and the addition/replacement of underground storage facilities.

**June 15, 2005**

**Phillip R. Waier, P.E.**

**List of Testimony and Depositions**
**Testimony**

PepsiCo v. Town Of Harrison
May 13, 1998

Louisiana Pacific Florida Class Action Suit
Fairness Hearing
August 14, 1995
Judge Jerry T. Lockett
Lake County, Florida

B.F. Goodrich v. Oldsmans Township
April 28, 1997
Judge Axerlad
Tax Court of New Jersey

Pocaro v. Town of Hopkinton
Massachusetts Superior Court
December 4, 2003
Judge Steven Neel
Cambridge, MA

Union Bridge NJ v. International Flavors and Fragrances
Tax Court of New Jersey
December 19, 2003
Honorable Harold A. Kuskin
Mossistown, NJ

Melvin Weiner v. Shake Company of California
Superior Court of Contra Costa County, CA
June 1, 2005
Honorable David Flinn

Davis v. Louisiana Pacific
Superior Court of Stanislaus county, CA
January 26, 2006
Honorable William A. Mayhew

**Depositions**

Masonite Corp. and International Paper Co. v. Affiliated FM Ins. Co. et al
July 22, 1999

Nancie Williams, el al. V. Weyerhaeuser Company
December 14, 1998

Naaf, et al. v. Masonite Corporation., et al.
February 4, 1997

Eula Guidry Ardoin, et al. V. Stine Lumber Co., Inc., et al.
December 18, 2002

Chicago Painters and Decorators v. Royal International Drywall and Decorating
February 18, 2002

**Provided replacement cost estimates for the following class action litigation.**

Louisiana Pacific Siding Replacement
Masonite Siding Replacement
Masonite Woodruf Shingle Replacement
Weyerhaeuser Siding Replacement
Abitibi Siding Replacement
Cal-Shake Shingle Replacement
Nature Guard Shingle Replacement

C:\0waier\personnel\expert witness

# EXHIBIT D

**Albert Harkness & Associates, Inc.**
Architects and Code Consultants

2 Central Street
Ipswich, Massachusetts 01938

Telephone: (978) 356-9058
Facsmile: (978) 356-2566

## Albert Harkness III, AIA

### Education:

Harvard Graduate School of Design
M.Arch. 1971

Harvard College
A.B. 1963

### Architectural Registrations:

Massachusetts (1973)
Connecticut (1985)
New Hampshire (1985)
Maine (1985)
Rhode Island (1976)
Vermont (2001)
New Jersey (1988)
New York (1985)

### Work experience:

1987-Present
Albert Harkness & Associates, Inc. (Incorporated 1/1/94)
Ipswich, MA

Private practice, including architectural design and consulting with regard to building codes, premises liability, construction safety, and building envelope defects.

1986-1987
Principal
Lindentree Corp. (Design-Build)
Hamilton, MA

1983-1986
Vice President
The Carlson Group, Inc. (Design-Build)
Cochituate, MA

1982-1983
Project Architect
The Stewart Design Group
Boston, MA

1976-1982
Partner
Harkness & Wick, Architects
Harkness & Wick Development Corp. (Design-Build)
Boston, MA

1973-1975
Project Designer
Sumner Schein, Architects
Boston, MA

1972-1973
Construction Supervisor
Housing Innovations, Inc.
Boston, MA

1971-1972
Designer
Perry, Dean & Stewart
Boston, MA

1963-1966
Lieutenant
U.S. Marine Corps

Organizations and Affiliations:

American Institute of Architects
Boston Society of Architects
Building Envelope Subcommittee
National Council of Architectural Registration Boards (NCARB)
Construction Specifications Institute
International Code Council
American Society of Testing and Materials (ASTM)
National Fire Protection Association
Ipswich Development Review Committee

Publications:

Building Codes: An Historical Perspective March/April 1995 edition of BOCA Magazine. An abridged version was later published in the NCARB "Certifier".
Watch Your Step November 1997 edition of The Construction Specifier (Journal of the Construction Specifications Institute).
Air Infiltration and the Wall-to-Window Interface (contributor) Architecture Boston, Vol. 1, 1998 (Journal of the Boston Society of Architects).
Codes, Litigation, and You Architecture Boston, Summer 1999.

Query1 5/15/2006

| COMPANY NAME | CASE NAME | Trial Date | Deposition D | Court and Docket |
|---|---|---|---|---|
| Law Office of Richard P. | Angelo Sabatalo vs. Worcester Mechanics Association | 9/19/2002 | | Hampden Sup. # 02 709 |
| Commerce Insurance Co | Frances Higbee vs. Merrimack Condo Trust | 1/28/2003 | | Middlesex Sup. Ca # 200 |
| Mark Mahnken, Attorney | Yvon Gregoire vs. Melrose Housing Authority | 5/21/2003 | | Middlesex Sup. CA # 136 |
| Finnegan Underwood Ry | Christine White vs. Shawn McCormick | 1/8/2004 | | Suffolk Sup. CA # 01-48 |
| Stanton & Lang | Beverly Shawn O'Connell vs. Robert Levesque | 11/8/2002 | | Essex Sup. # 9900868 |
| Commerce Insurance | Nicole Boulware vs. Peter James | 1/21/2004 | | Essex Sup. CA#01-2025 |
| Gillespie & Rose | David Nagle vs. Pat-C Inc. Middlesex Sup. # 00-0411 | 6/28/2002 | | Middlesex Sup. |
| Office of Jared H. Adams | McCarthy vs. Charlie's Place and Thomas Sawin | 6/16/2003 | | Barstable Sup. CA# BAC |
| Devine, Millimet & Branc | Gerri Shubow vs. Uncle Jimmy's Whiz Bang Toys Carroll co | 3/19/2002 | | Carroll Cty Superior CA 0 |
| Quincy Mututal | Youssef vs. Leung | 3/31/2004 | | US Dist Ct. # 02-11901- |
| New England Claims Ser | Elizabeth Croken vs. Let's Pretend, Inc. | 6/8/2004 | | Salem Sup. CA # ESCV2 |
| Ardito, Sweeney, Stusse, | T. A. Nelson vs. Eugene McCulloch | 4/15/2002 | 3/29/2002 | arbitration 4/15/2002 |
| Gillespie & Assoc. | Katrine Stevens vs. Pirates Lane Condominium Trust et al. | 11/10/2003 | | Essex sup. CA # 96-040 |
| Neville & Kelly | David Hale vs. Harry and Rowena Abadi | 9/27/2002 | | Middlesex Sup. # MICV2 |
| Finnegan, Underwood, R | Marilyn Frederico vs. Hills Medical, LLC et al. | 9/17/2003 | | Dedham Dist. CA No. 01 |
| Gillespie | Margaret Williams vs. Edward Ryan and Mary Hughes | 10/14/2005 | | Suffolk sup. 2000-2742 |
| Sloane and Walsh | ESA vs. Quaker Windows et al | 6/27/2005 | | Essex Sup. C. A. 01-127 |
| Hanover Insurance | Carol Vitale vs. Cleveland Fence Co. | 3/20/2006 | | |
| Kenner, Engelberg, Brac | John Enwright vs. MMR Builder, Inc. | 12/8/2005 | | Middlesex Sup. CA # 03- |
| Gillespie & Associates | Janice Ethier vs. Adele Papaefthemiou | 12/5/2003 | | Essex Sup. CA # 2001-0 |
| Gillespie & Associates | Jean Taylor vs. Stephen Slarsky et al. | 10/15/2004 | | Worcester Sup. CA 01-0 |
| Stanton & Lang | Kelnar Jeffries vs. Morris Piccolo | 5/9/2003 | | Arbitration |
| Devine Millimet & Branch | Winnisquam Regional School District vs. Dutton and Garfield | 11/20/2003 | 10/10/2003 | Belknap NH Sup. # 02-C |
| Donald E. Feener & Asso | James Davis vs. Ronald Abregu et al. | 9/15/2003 | | Middlesex Sup. MICV00- |
| Vermont Mutual | Regina Balcaitiene vs. John Skabeikis | 4/20/2006 | | Suffolk Sup. CA# 035252 |
| Gillespie & Assoc. | Winston Forbes vs. Scott Cullen et al. | 10/5/2005 | | Essex sup. ESCV2002-0 |
| Gillespie | Richard Donahue vs. Robert Houde | 5/11/2006 | | Essex Sup. CA# 03-2432 |
| Finnegan, Underwood, R | Ilya Yeliseyev vs. Vladislav Yanovsky | 2/22/2006 | | Suffolk Sup. CA # 03-44 |
| Donovan Hatem | Harris et al vs. William Rawn Associates | 9/9/2005 | | |
| Bingham McCutchen | Stephen Columbus vs. Boston Globe | 2/1/2005 | | Middlesex Sup. CA # 00- |