UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

GORDON NOONAN and NANCY NOONAN,
Plaintiffs,

v. C.A. No. 05-150S

NEW WHARF TAVERN, INC.,
Defendant.

**Memorandum and Order**

WILLIAM E. SMITH, United States District Judge.

Plaintiffs, both Florida residents, bring this diversity action against Defendant, a Rhode Island corporation, for various injuries that resulted from Plaintiff Gordon's fall down stairs at Defendant's tavern. Count I of the Complaint alleges Defendant failed to take reasonable care to prevent Plaintiff Gordon's injurious fall; Count II alleges Defendant negligently served Plaintiff Gordon liquor, in violation of Rhode Island General Laws §3-14-6; Count III alleges Defendant recklessly served Plaintiff Gordon liquor, in violation of Rhode Island General Laws §3-14-7; Count IV alleges Defendant's conduct caused Plaintiff Nancy a loss of consortium, in violation of Rhode Island General Laws §9-1-41. Before this Court is Defendant's Motion for Summary Judgment on all counts. The Court heard oral argument on October 16, 2006.

When evaluating a summary judgment motion, the "critical inquiry is whether a genuine issue of material fact exists." Crawford v. Cooper/T.Smith Stevedoring Co., Inc., 14 F. Supp. 2d

202, 208 (D.R.I. 1998). The Court must view the record in the light most favorable to the nonmovant, and "give that party the benefit of all reasonable inferences in its favor." Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006). "At the summary judgment stage, there is 'no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood.'" Crawford, 14 F. Supp. 2d at 208 (quoting Greenburg v. Puerto Rico Maritime Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987)).

**Count I: Premises Liability**

Plaintiffs allege Defendant failed to maintain the Tavern in a condition free from dangerous or defective conditions, thereby causing Gordon's fall down the stairs. Specifically, Plaintiffs allege that at the stairway's midpoint, the handrail unsafely transitions from one design to another. Rhode Island imposes upon owners of property "an affirmative duty . . . to exercise reasonable care for the safety of persons reasonably expected to be on the premises * * * includ[ing] an obligation to protect against the risks of a dangerous condition existing on the premises, provided the landowner knows of, or by the exercise of reasonable care would have discovered, the dangerous condition." Kurczy v. St. Joseph Veterans Ass'n, Inc., 820 A.2d 929, 935 (R.I. 2003) (internal quotation marks and citation omitted).

Defendant contends that the Noonans impermissibly rely upon the Rhode Island state building code[1] as a reference point for measuring negligence. Defendant is correct that under Rhode Island law, reference to the code for purposes of determining negligence is inappropriate when it does not apply to the defendant's building. See Geloso v. Kenny, 812 A.2d 814, 817 (R.I. 2002). Because the structure predates the enactment of the code, the code normally would not apply to the Tavern. See R.I. Gen. Laws § 23-27.3-105.1 (1997). Plaintiffs, however, claim the code does apply to the Tavern because of substantial modifications made to the Tavern in 1990-1991. See R.I. Gen. Laws §§ 23-27.3-106.0, 23-27.3-106.1 (1997). Although Defendant disputes the strength of Plaintiffs' experts' conclusions about the applicability of the code, it is not this Court's role at the summary judgment stage to credit one expert's conclusion over another's about the applicability of the code. See Crawford, 14 F. Supp. 2d at 208. The factual dispute between the parties' experts as to whether the handrail did in fact violate the code, if applicable, is sufficient to preclude summary judgment.

Moreover, even if this Court were to conclude that the Plaintiffs' experts' conclusions were not creditable as to the applicability of the code, there is additional evidence from which a jury could conclude Defendant breached its duty to exercise

---

[1] R.I. Gen. Laws §§ 23-27.3-100.0, 23-27.3-701 (1997).

reasonable care. One of Plaintiffs' experts concluded that "[the] stairs are defective in total make up," including the handrail itself. Construed in Plaintiffs' favor, this expert conclusion coupled with lay testimony from Stewart Eddy regarding the handrail's unsafe design, suggests that independent of any code violation, "these circumstances amounted to defendant's maintaining an unsafe and defective artificial condition on the premises, and . . . that defendant should have discovered and corrected it before allowing its premises to be used. . . ." See Kurczy, 820 A.2d at 936.

Even if Defendant lacked actual knowledge of this potentially dangerous condition, Kurczy makes clear that actual knowledge is not necessarily prerequisite to a premises liability claim. Id. at 935. Moreover, Defendant's focus on what it perceives as faulty reasoning by Plaintiffs' expert, and on the absence of past injuries caused by the handrail, all go to the weight, not the sufficiency, of the evidence. Defendant is free to argue to the jury that this evidence militates against Plaintiffs' claim, but it does not entitle Defendant to summary judgment.

**Counts II and III: Negligent and Reckless Service of Liquor**

Plaintiffs next claim Defendant violated the Rhode Island Liquor Liability Act, §§ 3-14-6,[2] 3-14-7.[3] Under Rhode Island law,

---

[2] Section 3-14-6 provides, in relevant part:

> (b) A defendant . . . who negligently serves liquor

a plaintiff's blood alcohol content is evidence from which a jury may draw conclusions about a plaintiff's level of visible

---

> to a visibly intoxicated individual is liable for damages proximately caused by the individual's consumption of the liquor.
>
> (c) Service of liquor . . . to an intoxicated individual is negligent if the defendant knows, or if a reasonable and prudent person in similar circumstances would know that the individual being served is . . . visibly intoxicated.

R.I. Gen. Laws §3-14-6 (1998).

[3] Section 3-14-7 provides, in relevant part:

> (b) A defendant . . . who recklessly serves liquor to a visibly intoxicated individual is liable for damages proximately caused by that individual's consumption of the liquor.
>
> (c)(1) Service of liquor is reckless if a defendant intentionally serves liquor to an individual when the server knows that the individual being served is . . . visibly intoxicated, and the server consciously disregards an obvious and substantial risk that serving liquor to that individual will cause physical harm to the drinker or to others.
>
> (2) For the purposes of this chapter, the disregard of the risk, when viewed in light of the nature and purpose of the server's conduct and the circumstances known to him or her, must involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation.
>
> (d) Specific serving practices that are admissible as evidence of reckless conduct include, but are not limited to, the following:
>
> (1) Active encouragement of intoxicated individuals to consume substantial amounts of liquor.

R.I. Gen. Laws §3-14-7 (1998).

intoxication. Maciszewski v. Flatley, 705 A.2d 171, 173 (R.I. 1998). There, the plaintiff's "state of intoxication at the time of the breathalyzer test could certainly be found by a trier of fact to indicate that she was visibly intoxicated at the time she was served alcoholic beverages at the Sheraton." Id.

Here, there is a genuine issue of fact as to whether Plaintiff Gordon was visibly intoxicated at the Wharf Tavern, and if so, whether the bartender's conduct fell below the standard required by the Liquor Liability Act. When Gordon was admitted to the hospital following his fall, his blood alcohol content was nearly three times the legal limit. At this level, Plaintiffs' expert testified, a normal person would show signs of intoxication; even Defendant's experts opine that Plaintiff would have to "consume between 12 to 13 drinks" to attain that level. Additionally, Mr. Smith, another attendee at the Tavern, testified at his deposition that Plaintiff's "words were coming out slowly, that [Gordon's] speech was somewhat slurred, and that "neither [Gordon nor Mr. Eddy] should be driving." From this testimony and other evidence that the bartender, Mr. Asciola, was the only person serving Gordon alcohol that night, the jury could permissibly infer that Mr. Asciola did, contrary to his deposition testimony, observe signs that Plaintiff was intoxicated either at the time of last service or at a point earlier in the night. This evidence also creates an issue of fact as to how "a reasonable and prudent person" in Mr.

Asciola's position should therefore have reacted to that outward condition. See id.

Defendant contends that Plaintiffs' expert, Dr. Cohen, must have "some first-hand evidence that Mr. Noonan exhibited visible signs of intoxication at or before the time of last service." This overstates Plaintiffs' burden; Maciszewski makes clear that circumstantial evidence of visible intoxication is as probative as direct evidence. See 705 A.2d at 173.

Because there are factual disputes regarding Plaintiff Gordon's intoxication and consequently how the bartender should have reacted to such, summary judgment on these counts is inappropriate.

**Count IV: Loss of Consortium**

Plaintiff Nancy's claim is clearly derivative in nature.[4] Because there are genuine issues of fact on Counts I, II, and III, summary judgment is likewise inappropriate on this count.

---

[4] Section 9-1-41 provides, in relevant part:

> (a) A married person is entitled to recover damages for loss of consortium caused by tortious injury to his or her spouse.

R.I. Gen. Laws §9-1-41 (1997).

**Conclusion**

Because there exist genuine issues of fact as to all of Plaintiffs' claims, the Defendant's Motion for Summary Judgment is DENIED.

IT IS SO ORDERED.

William E. Smith
United States District Judge
Date: 1/3/07